MARGARET BENSON *et al.*

*v.*

WILLIAM HALL *et al.*

*Filed at Mt. Vernon April 2, 1894.*

1. DEED—*delivery necessary to validity.* Where a party signing and acknowledging a deed to his two sons is shown to have had a fixed purpose to give his land to them to the exclusion of his daughter, and believed he had accomplished that purpose by such deed, yet if he did not deliver the same in his lifetime, or intend it to take immediate effect without delivery, it will be void, and pass no title.

2. A father had made a deed of land to his two sons, and placed the same in the hands of his wife, and the day before his death he had his wife bring him the deed, and he then gave the same to one of his sons, stating that was for him and his brother: *Held,* that these facts showed the delivery of the deed.

3. WILL—*recital of a gift not made.* Where the testator, in his will, recites that he has, by some instrument other than the will, given property to a person named, when, in truth and in fact, he has not done so, such erroneous recital will not disclose a purpose and intent to give by the will. In such case resort must be had to the other instrument, and not to the will.

APPEAL from the Circuit Court of Madison county; the Hon. B. R. BURROUGHS, Judge, presiding.

Mr. LEVI DAVIS, Jr., and Mr. JOHN F. McGINNIS, for the appellants:

Where a deed purporting to convey a present absolute estate is intended by the grantor to take effect at his death, and remains under his control during his lifetime, it becomes inoperative for want of a delivery; and this is true even in cases of voluntary settlements. *Byars* v. *Spencer,* 101 Ill. 429; *Cline* v. *Jones,* 111 id. 563; *Bovee* v. *Hinde,* 135 id. 137; *Otis* v. *Spencer,* 102 id. 622; *Benneson* v. *Aiken,* 102 id. 284.

Where a recital in a will is to the effect that the testator has, by some instrument other than the will, given to a certain person named in the recital, property, when, in fact, he has

not done so, such erroneous recital will not disclose a purpose or intent to give by the will, and resort must be had to the other instrument, and not to the will. *Hunt* v. *Evans*, 134 Ill. 496.

The defendants claim the land by another title than that acquired under the Statute of Descents, and are therefore incompetent to testify against complainants, who claim as heirs of their deceased father. *Treleaven* v. *Dixon*, 119 Ill. 548; *Way* v. *Harriman*, 126 id. 132; *Shaw* v. *Schoonover*, 130 id. 455.

It is not competent to control the effect of the deed by parol evidence when it has once taken effect by delivery, but it is always competent to show that the deed, although in the grantee's hands, has never, in fact, been delivered, unless the grantor, or those claiming through him, are estopped in some way from asserting the non-delivery of the deed. *Jordan* v. *Davis*, 108 Ill. 336; *Price* v. *Hudson*, 125 id. 287; *Bovee* v. *Hinde*, 135 id. 137.

Mr. JOHN J. BRENHOLT, for the appellees:

It is not essential to the delivery of a deed that it shall pass from the hand of the grantor to the grantee. Any disposition of the deed by the grantor with the intention thereby to make delivery of it, so that it shall become presently effective as a conveyance of title, will, if accepted by the grantee, constitute a sufficient delivery. The intention to deliver, on one hand, and the acceptance on the other, may be shown by direct evidence of the intention, or both acts and declarations, of the parties, constituting parts of the *res gestæ* which manifest such intentions. *Price* v. *Hudson*, 125 Ill. 284.

Where a deed duly executed is found in the hands of the grantee, there is a strong implication that it has been delivered, and only clear and convincing evidence can overcome the presumption. *Tunison* v. *Chamblin*, 88 Ill. 379; *McCann* v. *Atherton*, 106 id. 31; *Griffin* v. *Griffin*, 125 id. 430.

Any paper may be referred to so as to become a part of the will, in order to ascertain the real intention of the testator in the disposition of his estate. It must be in existence at the time, and identified as the paper referred to. 1 Redfield on Wills, (3d ed.) 261-268.

The recitals in the will of Hall show that he had conveyed to his widow and sons certain property by deeds, which deeds were properly executed, and consequently both the will and deeds may be resorted to to disclose the purpose and intent of the testator, and the deeds, having been executed several months prior to the making of the will, are made a part thereof by recitals. *Hunt* v. *Evans,* 134 Ill. 505.

Mr. Justice Wilkin delivered the opinion of the Court:

This was a bill in chancery by Margaret Benson and husband and Hannah Long and husband, against William Hall, John Hall and Jane Hall, for partition and assignment of dower. The complainants Margaret Benson and Hannah Long, and the defendants William and John Hall, are the only surviving children and heirs-at-law of William Hall, deceased. The defendant Jane Hall is his widow. William Hall died January 10, 1892. On the 20th of November, 1889, he signed and acknowledged two deeds, one conveying to Jane Hall, his wife, a part of the real estate described in the bill, and the other (his wife joining) to his said sons, all the remainder thereof. On the 19th of April, 1890, he executed his last will and testament, giving to each of his daughters the sum of $100, and to each of his sons one dollar, stating that it, together with the advances made both of them from time to time, "and the real estate I have deeded them, to be in full satisfaction of their share of my estate." He also gave to his wife one dollar, and stated that it, "in addition to what I have already deeded to her, to be in lieu of her dower in my estate." Complainants, in their bill, proceed upon the theory that the lands described are intestate estate of their father, and

upon his death descended to his four children in equal shares, as tenants in common, subject to dower in his widow. The defendants, in their answer, set up the deeds of November 20, 1889, and the will of William Hall, and claim title under the same. The cause was heard in the court below on the bill, answer, replication and proofs, and a decree entered dismissing the bill at complainants' costs, and they appeal.

Appellants insist that the deeds under which appellees claim were never delivered. This appellees deny, and also claim that even if they were not, they, with the will of the grantor, vest title in them. In support of this last position, *Hunt* v. *Evans et al.* 134 Ill. 496, is cited. But that case is directly to the contrary. We there said: "But where the recital in the will is to the effect that the testator has, by some instrument other than the will, given to a certain person named in the recital, property, when, in truth and in fact, he has not done so, such an erroneous recital does not disclose a purpose and intent on the part of the devisor to give by the will, and in such case resort must be had to the other instrument, and not to the will, by persons interested." Our decision, then, must finally turn upon the single question, was there a sufficient delivery of the deeds set up in the answer to pass the title.

That Hall had, for several years prior to his death, a fixed purpose to give the lands to his sons and wife, to the exclusion of his daughters, and that he believed he had accomplished that purpose by these deeds, the evidence leaves no room for doubt. Nevertheless, if he did not deliver them during his lifetime, or intend them to take immediate effect without delivery, they were void. The sons were members of their father's family at the time the deeds were made, and remained so to the time of his death, William then being twenty-six and John twenty-three years of age. The deeds were acknowledged before a justice of the peace, in the city of Alton. After detailing the circumstances attending their execution, he says: "I was about passing them over to Mr. Hall. There

were the two—one for the boys and one for Mrs. Hall—and I offered them to Mr. Hall, and he said, 'Just pass them over to my wife,' and I passed them over to her at that time." He also testified, that at the time of their execution Hall objected to a clause being put in the one to the sons, to the effect that they should not come into possession of the property until after his death, saying, "He did'nt know what might turn up during his lifetime, and he didn't want the property to entirely go out of his possession. * * * If the property was not disposed of in his lifetime, he wanted the boys to have it after his death. The same remarks applied to Mrs. Hall's deed." The evidence also shows that he did retain possession and control of the land, and paid the taxes assessed against it, the sons working on it, substantially as before the deeds were made. The question then remains, were they actually delivered before his death. About ten days before he died, he directed his wife to get them, that a neighbor might read them to him, and she did so, bringing them from "up stairs." After they were read they were handed back to her, he telling her "to put them where she got them." A niece of Mrs. Hall, thirteen years old, who had been raised in the family, testified that the day before his death he told his wife to "get the deeds," which she did, and handed them to him; that he at the same time told her to call the boys in; that "he gave Will one, and said that was for him and John, and gave Auntie one, and said that was for her." .

It is contended in the argument of counsel for appellant, that the testimony of the witness is too indefinite as to the identity of the deeds to amount to proof of their delivery. We do not agree with that view. If her statements as to what was done and said are true, there can be no reasonable doubt that the papers then delivered were the deeds in question. An effort is also made to discredit the girl upon the ground that her story is an improbable one, bearing on its face ear-marks of being manufactured for the occasion. After carefully read-

ing her testimony at length, from the record, we are unable to find any justifiable grounds upon which to base so serious a charge. She manifests no want of intelligence in her manner of testifying. What she states must be substantially true or willfully false. It is not a matter about which she may have been mistaken. In view of the fact that Hall intended these deeds to take effect at his death, had manifested anxiety about them ten days before, and his near approach to death, the occurrence, as she details it, was not an unnatural or improbable one. Therefore her evidence could only be discredited by arbitrarily saying, that on account of her youth and close relationship to one of the interested parties she should not be believed. This the court below was evidently not willing to do, nor are we.

But it is said, the delivery of the deeds as described by her is inconsistent with the statements and conduct of the widow after her husband's death, as shown by the testimony of one Emery. He testified that the day of Hall's death the deeds were handed to him by the widow "to be sent over for record," and that she then said, "that these were those papers that Mr. Hall requested that she should hand to me, if anything happened to him, to send over for record." The widow herself, and others present when she handed the papers to the witness, remember her language differently from his statement of it; but admitting that she said all he says she did, we are unable to see how it tends to discredit the testimony of the girl. Giving directions as to having the deeds recorded was in no way inconsistent with their having been delivered.

We think the decree of the circuit court is in harmony with the evidence in the case, and it will accordingly be affirmed.

*Decree affirmed.*