[No. 5743.]

## BRIGGS, ADMINISTRATOR, v. CHAMBERLAIN ET AL., EXECUTORS.

**1. Directed Verdict — Conflicting Testimony** — Where the plaintiff produces substantial testimony fairly tending to establish his contentions, the issue must be left to the jury. Even though such testimony be contradicted, it is error to direct a verdict for the defendant.—(390)

**2. Decedents' Estates—Claims**—Any claim which could have been enforced against a decedent in his lifetime may be enforced against his estate.—(392)

**3. Cases Overruled, Distinguished or Explained**—The broad doctrine as to what claims may be proven against decedents' estates, asserted in Lusk v. Patterson, 2 Col. App. 306; Pastorius v. Davis, 9 Col. App. 426; Riner v. Husted's Estate, 13 Col. App. 523; Currier v. Johnson, 19 Col. App. 245, is modified in U. S. Fidelity Co. v. People, 44 Colo. 557.—(392)

**4. Principal and Agent—Revocation of Agency**—An agency at will may be terminated by the principal at any time before the agent has completed his commission; but if the authority of the agent has been executed in part, and by revocation as to the unexecuted portion of the agency, damage results to the agent, the principal must indemnify him.—(394, 395)

**5. Statute of Frauds — Agency to Purchase Lands — An** agency to negotiate for the purchase of lands need not be evidenced by writing.—(395)

**6. Contracts—Voidable—Who May Avoid**—A contract which is not void and is voidable only because one of the parties thereto is therein acting in hostility to a duty which he owes to a third person, can be avoided only by such third person.—(396)

One who employs a director of a corporation to purchase the corporate property or stock, cannot, in an action by the agent to recover his compensation, object that the director was acting in hostility to the interests of his fiduciaries, the corporation and stockholders.—(396)

*Error to El Paso District Court*—Hon. LOUIS W. CUNNINGHAM, Judge.

Mr. CHARLES S. THOMAS, Mr. R. L. HOLLAND, and Mr. W. G. SMITH, for plaintiff in error.

Mr. DAVID P. STRICKLER, and Messrs. MCALLISTER & GANDY, for defendants in error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

E. A. Meredith, now deceased, filed a claim against the estate of Winfield S. Stratton, deceased, in the county court of El Paso county, the court in which the administration proceedings of the estate were pending. The amended claim filed was as follows:

"The Estate of W. S. Stratton
To E. A. Meredith, Dr.
June 1, 1900.

1. To services as agreed in negotiating purchase of mining property in Cripple Creek belonging to Mars Con. G. M. Co. (purchase price to be paid by said Stratton as agreed upon, $90,000).................$10,000

2. To loss of profits and depreciation, from June, 1900, to date, on 1,000,000 shares of the capital stock of The Mars Consolidated Gold Mining Company acquired and held by said Meredith under the terms of an agreement with said Stratton entered into on or about March 15, 1900, being the difference between the present value of said 1,000,000 shares of said stock and what the same would have been worth had said Stratton carried out his agreement with said Meredith and paid the said Company $90,000 for its property as per contract...........$50,000

3. To damages sustained by said Meredith account of loss of interest on above amounts at legal rate, from June 1, 1900, to date,* 3 years, 8 months..................$17,600

Total........................$77,600"

* The claim was verified by Meredith under date of February 8, 1904.

The trial upon the claim resulted in a verdict and judgment in favor of the estate, from which the claimant appealed to the district court. The trial in the district court was before a jury. At the conclusion of the testimony, the court, on motion of the representatives of the Stratton Estate, directed a verdict in its favor, and the executors thereof, and against the plaintiff. From the judgment on this verdict the claimant has brought the case to this court for review on error. Since then he has departed this life, and his administrator, Frank N. Briggs, has been substituted as plaintiff in error.

The first question presented for our consideration is whether or not the evidence was such as to justify. the court in directing a verdict in favor of the Stratton Estate. In order to determine this question it becomes necessary to review the testimony.

W. A. Ramsey, a witness on behalf of the claimant, testified by deposition in substance as follows: That he was in the employ of W. S. Stratton nearly five years, beginning in October, 1896, and ending in June, 1901; that during the last three years of his employment he was the confidential secretary and business agent of Stratton; that he knew a verbal agreement was entered into between Meredith and Stratton relative to the purchase by Stratton, through Meredith, of the mining property of The Mars Consolidated Gold Mining Company; that he acquired this knowledge from Stratton, and through negotiations held jointly between Stratton, Meredith, and himself; that in May, 1900, Mr. Stratton informed him that definite verbal arrangements had been entered into with Meredith, whereby he had agreed with the latter to pay the Mars company $90,000.00 for its property, and to pay Meredith the further sum of $10,000.00 for his services in the matter; that Meredith was to secure by purchase or pledge at

least 1,000,000 shares of the stock of the company, the better to insure a proper, legal sale of the property of the company under at least a two-thirds vote of all the stock. A few days later Mr. Stratton told the witness there had been some misunderstanding about the title, but that he, Stratton, was satisfied it was all right, but he would like to have the matter delayed, in order that the witness might concur in his views as to the validity of the title and advisability of purchasing the property. Stratton further stated to the witness, at this time, that he had definitely agreed with Meredith to take the property subject, of course, to a proper scrutiny of the title. He also stated at this time that Meredith had bought control of the stock of the Mars company in pursuance of his understanding with him. A few days later Mr. Stratton informed the witness that to carry out some other plans for the purchase of property in the Cripple Creek district, would require an immense sum of money, and requested him to do all he could to hold back the Meredith deal, and keep him on the string until he could carry out his other plans, which he said would cost a large sum. He also stated at this time that there were other properties in the near vicinity of those belonging to the Mars company which he wished to purchase, and if he closed the deal for the Mars properties first, he might be compelled to pay too much for others in the near vicinity, which he also wished to buy. He also stated at that time that the Mars company deal could be closed at any time, while the other matters would not wait, and as Meredith had bought over 1,000,000 shares of the Mars stock, he held the key to the situation, and could secure control at one time as well as another. He asked the witness if he thought Meredith would make any trouble, to which he (the witness) replied he thought not; that Meredith's general method of pro-

(25)

ceeding with the deal indicated either an unusually great degree of confidence in his verbal statements, or a lack of business judgment, because few men would have been willing to invest their money in the purchase of so large an amount of stock, and trust to the chances of delay and accident not interfering with the closing of the deal, and that most men would have required him to furnish the money for the purchase of the shares.   To these suggestions Mr. Stratton replied: ''The property is mine, anyhow, but I want to delay taking it over until I get other things fixed, and I want you to help me do it.   I am using my money up awfully fast, and Meredith must wait awhile.''   The witness then continues, in substance, to state that Meredith visited him at Stratton's office a few days later; that Meredith and Stratton had a few minutes' conversation; that Stratton left the room shortly after, saying as he went out: ''Meredith, you hold on a little.   You and Ramsey can fix it some way so we don't have to do all this business right now.   It will hurt my other business if I do.'' That Meredith occasionally visited Mr. Stratton's office, sometimes seeing him and sometimes not, and finally told him (the witness) that since his illness he had been placed in a very awkward financial position by the purchase of the Mars stock, and if the deal was not to be closed soon, he must go out on some railroad construction work and earn some money, and Mr. Stratton could send for him when he wanted him. He says he reported this conversation to Mr. Stratton.

A witness, Charles S. Wilson, also testified by deposition on behalf of the claimant, in substance as follows:   That he was a director of the Mars company, and in May, 1900, met Mr. Stratton in Colorado Springs, near his office, and informed him that a Mr. Wood had applied for a lease and bond on a small

piece of ground belonging to the Mars company; that he understood that he, Stratton, had some deal on with Meredith for the property or stock of the company, and asked him whether he had any objection to the granting of Wood's application, to which Mr. Stratton replied: "Yes, don't do it." The witness then asked him if he objected to the leasing of the property, or only to the bonding of it, to which Stratton replied: "Don't do either."

Fred Hills, a mining engineer, testified by deposition, that he published in 1900 a manual of the Cripple Creek district; that the map of Stratton's group therein, which includes the greater part of the Mars property, was submitted to Mr. Stratton before it was published; that Mr. Stratton approved it, saying he had practically bought the property of the Mars company, and was willing that it should show in the publication as embraced under Stratton's group.

J. C. Staats testified that in 1900 he was a director and stockholder of the Mars company; that in the latter part of 1900 or the early part of 1901, he had a conversation with Mr. Stratton, in which he stated that he was in a deal for the Mars stock, through Mr. Meredith, and that as he, the witness, was an owner of some of that stock, he would realize about five thousand dollars when the deal was closed.

James H. Emerson, a witness on behalf of claimant, testified that he had been employed by Mr. Stratton in the capacity of mine superintendent for several years; that Mr. Stratton at one time was showing him different properties he had bought, among which was the Mars and other properties in Poverty gulch section, where the Mars was located; that he intended to do a large amount of work in that locality, and pointed out to him where he intended to sink a shaft.

The veracity of these witnesses was not assailed,

and no testimony was offered or introduced contradicting the statements of either of them, except some correspondence between Stratton and claimant, introduced by the Estate. This correspondence is as follows:

"Grand Ranch, Grand Co., Colo., 6-17-02.

"Mr. W. S. Stratton, Colorado Springs, Colo.

"Dear Sir:—I write to ask you if there is any chance of making a deal on Mars yet? I went flat broke holding that thing together, and had to get out on railroad location again. Hoping that we may be able to get up some kind of a trade, I remain,

"Very truly,

"E. A. MEREDITH.

"P. O. Address Fraser, Grand Co., Colo."

To this letter the following reply was addressed:

"Office I. C. C., W. S. Stratton,

117 Pike's Peak Avenue.

"Colorado Springs, Colo., June 24, 1902.

"E. A. Meredith, Junction Ranch, Grand Co., Colo.

"Dear Sir:—Your letter of the 17th inst. at hand. I fear it is too late to consider the Mars deal, as I have concluded my purchases. However, I may reconsider the matter when next in camp and looking over the ground, and if I care to do anything, will write you further. "Yours truly,

"W. S. STRATTON.

"L."

Later, Meredith addressed the following letter to Mr. Stratton:

"Fraser, Colo., 7-19-1902.

"Mr. W. S. Stratton, Colorado Springs, Colo.

"Dear Sir:—I do not wish to bore you to death with Mars, but would like to hold it together until I

can make some deal with you or some one else. Ever since buying up about 600,000 shares of the stock for our deal of about three years ago, I have been very top heavy with it. I have a $5,000 loan which I have to pay the 26th of this month. The loan is secured by 250,000 shares of Mars and pays 1 per cent. per month interest, payable monthly. I have tried every way I know how to raise this money but have failed, and write to ask you if there would be any possible chance of getting you to carry this $5,000 for me for six months, secured by the 250,000 shares of Mars stock and same rate of interest. This is on a basis of $30,000 for the 13.6 acres of ground owned by the company. If I can get this accommodation I can pull through all right. Will have the stock registered with The International Trust Co.

Am locating railroad over in this country and am not able to get to Cripple Creek to hustle around, else I might have made arrangements to take care of this matter. Will you kindly favor me with a reply as soon as convenient to you to do so, and greatly oblige        Respectfully yours,

.''E. A. MEREDITH.

''Address Fraser, Grand Co., Colo.''

To this letter the following reply was made:

''Office of W. S. Stratton,

117 Pike's Peak Avenue.

''Colorado Springs, Colo., July 25, 1902.

''Mr. E. A. Meredith, Fraser, Grand Co., Colo.

''Dear Sir:—Your letter of the 19th inst. at hand. I regret that I cannot make a loan of $5,000 on the Mars Con. stock, as requested. The demands on me in the Street Railway construction and other matters, have been so heavy that it is quite impossible for me

to make any loans.   Trusting that you will be able to arrange the matter satisfactorily, I am,

"Yours truly,

"W. S. Stratton.

"L."

In a case properly triable before a jury, if there is substantial testimony which establishes, or fairly tends to establish, the issues tendered by the plaintiff, though controverted directly or by inference by the testimony of the adverse party, the questions of fact at issue should be determined by the jury.   The testimony on behalf of claimant tended to establish the agreement which claimant claimed had been entered into between himself and Stratton as outlined by the claim he filed against the estate.   The letters inferentially tended to contradict it, but they were not conclusive.   From the testimony Mr. Stratton had requested time within which to close the deal. He had given as a reason for this request that other transactions required all his available cash; that he wished to buy other properties in the vicinity of the Mars group, which he thought he could purchase more advantageously if he did so before buying the Mars property; that because Meredith owned the majority of the stock of the Mars company he held the key to the situation, and the deal could be consummated at any time for this reason.   It is not improbable that Meredith had a definite object in view when he purchased this stock; otherwise, he would not have purchased to such an extent.   He was embarrassed financially as the result of such purchase.   He had borrowed money which was about due, and needed assistance.   He asked in his letter if there was any chance of making a deal on Mars yet.   This must be considered in connection with the testimony relating to the reasons why Stratton had delayed closing it.

In his second letter he says he is embarrassed from buying the Mars stock for "our deal." Mr. Stratton in his reply does not deny that there had been a transaction between Meredith and himself. The fact that he did not deny it might raise an inference that there was a deal in Mars stock or property in which both were interested. All these circumstances should be considered in determining what inference should be drawn from the letters written by Meredith to Stratton, and the questions of fact at issue between the parties with respect to the alleged contract involved, should have been determined by the jury.

We must not be understood as expressing any opinion on the weight of the testimony, or what facts were established thereby. What we do hold is, that the questions of fact relative to the contract should have been submitted to the jury. It was, therefore, error to withdraw this question from their consideration unless, for some other reason urged on behalf of the estate and executors, the court was right in sustaining a motion for a directed verdict.

On behalf of defendants in error two propositions urged in support of their contention that a cause of action was not established against the estate will be considered together:

(1) That the claim was not of the character permitted to be filed and prosecuted under the statute relating to claims against estates for the reason that only such claims as constitute a debt of the deceased existing at the time of his death are contemplated by the statute; and

(2) That the claim of Meredith could not have been enforced against Stratton because, at the time of his death, Meredith had not secured the consent of the directors and stockholders of the Mars company to transfer its property to Stratton for the price agreed upon, and hence, the transaction which the

claimant had been employed to consummate was not completed and he had not fulfilled his agreement. In other words, it is urged that if Meredith wanted to place himself in a position to sue Stratton for a breach of contract, he should have performed the services which he claims to have agreed to perform, namely, secure the consent of the directors and stockholders of the Mars company to the proposed sale to Stratton at the price agreed upon between himself and Stratton during the lifetime of the latter, and as there was no testimony on the part of plaintiff that he did procure such consent, during that period, he failed to establish a cause of action.

In support of the first proposition the following cases are cited: *Lusk v. Patterson,* 2 Col. App. 306; *Pastorius v. Davis,* 9 Col. App. 426; *Riner v. Husted's Estate,* 13 Col. App. 523; *Currier v. Johnson,* 19 Col. App. 245.

We do not deem it necessary to enter upon a discussion of this question, but call attention to the fact that the broad doctrine laid down by the above authorities has been modified by the recent case of *U. S. Fidelity & Guaranty Co. v. People,* 44 Colo. 557.

The real question is, does the evidence establish any claim (provided, of course, the contract upon which Meredith relied was established) which could have been enforced against Stratton in his lifetime? If so, then it can be enforced against his estate. There is evidence tending to prove that Stratton had caused Meredith to delay obtaining the formal consent of the directors of the Mars company to a conveyance of its property. Ramsey testified: "On several occasions the subject of Meredith's procuring the action of the directors and stockholders authorizing the sale was mentioned, and it was stated by Meredith to Stratton, in my presence, that he (Meredith) could not consistently have such action taken

until Mr. Stratton was ready to close the deal, and Mr. Stratton agreed that this course was the proper one to pursue.'' If this fact was established, as testified to by Ramsey, it does not appear that Meredith was guilty of any *laches* or conduct which, of itself, justified Stratton in refusing to carry out his contract. After the death of Mr. Stratton, at the request of Meredith the directors of the Mars company voted .to accept Stratton's proposition to purchase the property at the price agreed upon between Meredith and himself, and authorized the officers to execute a deed conveying the property to the person legally authorized to represent the estate, and accept the conveyance on the payment of the purchase price which Meredith claimed Stratton had agreed to pay. Thereafter the action of the directors was ratified by the stockholders and a deed executed by the company which, at the trial, was tendered to the executors, but they refused to accept it. Upon the strength of this action, it is urged by counsel for defendants in error that Meredith's claim was not predicated upon any breach of a contract with Stratton, but, on the contrary, if there was any breach, it was by the executors, and could only be enforced against them. We do not regard the latter proposition as material, for the reason, as above stated, that if the testimony established a cause of action embraced within the claim filed by Meredith which he could have enforced against Stratton, during his lifetime, it was enforceable against the estate.

According to the testimony introduced on behalf of claimant, he was employed by Stratton to purchase the Mars property for a given sum in consideration of which he was to receive $10,000.00 if he consummated the purchase at the price agreed upon. This agency was one at will. Such an agency may be terminated by the principal at any time before the

acts which the agent is to perform under the contract of employment have been performed.—Mechem on Agency, § 210.

The authority of Meredith to secure the Mars property was terminated by the letter of Stratton of June 24th, 1902, as above copied, for the reason that from its contents it is apparent that if any contract had been entered into between Stratton and Meredith relative to the purchase of the Mars property, Stratton refused to carry it out, and hence, Meredith cannot assert a claim against the estate for the $10,000.00 which he claims he was to receive for obtaining the Mars property for his principal for the sum of $90,000.00, because it does not appear that prior to the revocation he had obtained the consent of the Mars company to convey its property to Stratton for that sum, and had communicated to him that fact. The consent, then, of the Mars company to convey to the estate and the tender of a deed to the executors was of no avail, neither was it necessary, because the authority of Meredith, so far as that transaction was involved, had been previously revoked. But did this revocation deprive him of all remedy? If he established his contract as outlined by his claim filed, we think not. According to his contention, part of his contract was that he should purchase stock of the Mars company to the extent of 1,000,000 shares, so as to insure a legal sale of its property by securing the assent of a two-thirds vote of all the stock of the company. There was testimony tending to prove that he had purchased stock of the amount required, and also tending to prove that he had suffered damages resulting from the failure of Stratton to carry out his agreement.

While an agency at will may be terminated by the principal at any time before the acts which the agent is to perform under the contract of employ-

ment have been performed, it is also the law that if, before revocation by the principal, the authority conferred upon the agent has been executed in part, the unexecuted portion cannot be revoked, and if, by revocation of the part unexecuted, damage results to the agent, as to the executed part the principal must indemnify him to that extent.—Story on Agency, § 466; *United States v. Jarvis,* 3 Wood. & M. 217.

If, therefore, the testimony should establish the contract which Meredith claimed to have made with Stratton, and that he purchased the stock of the Mars company as agreed prior to the revocation of the authority conferred upon him to negotiate as the agent of Stratton for the Mars property, then he was entitled to recover the damages from Stratton he sustained on the stock purchased, as the result of the revocation of the unexecuted part of the authority originally conferred; and so it follows, that if he established a completed cause of action against Stratton which he could have enforced against him in his lifetime, he could enforce it against the estate in the county court under the statute relating to claims against estates of deceased persons.

On behalf of defendants in error it is next urged that the contract between Stratton and Meredith was within the statute of frauds, because it related to the purchase of real estate and should have been evidenced by a written agreement. Meredith was merely employed as an agent to purchase the Mars property for Stratton. He was not to convey the title to that property nor was Stratton to purchase from him. The authority or employment of an agent to negotiate a purchase of real estate for a principal need not be in writing.

It is finally contended that the agreement upon which Meredith relies was against public policy, and unenforceable by reason of his fiduciary relations

with the Mars company, its directors and stockholders. It appears that when the contract alleged to have been made with Stratton was entered into, and during the entire period of Meredith's negotiations with Stratton, Meredith was a stockholder, director, secretary and treasurer of the Mars company. The rule of law invoked, that a trustee cannot become the purchaser of trust property without the full knowledge and consent of his *cestui que trust,* or that a contract entered into by him which would place him in the position of acting contrary to the best interest of his *cestui que trust* cannot be enforced, is for the protection of the *cestui que trust,* and in the circumstances of this case, is not applicable, nor can it be taken advantage of by the estate to avoid the contract which Meredith claims to have made with Stratton. Meredith merely engaged to negotiate a purchase of the property of the Mars company for a given sum, and also purchase stock of the company from other stockholders, to be thereafter used for the benefit of Stratton. Such an agreement is not *per se* unlawful, in the sense that it is opposed to public policy. It rested with the company to make a contract for the sale of its property. . If, because of the fact that such a contract was induced by Meredith, it could be avoided by the company, it was for it to exercise that right; Stratton could not. And so, of any stockholder of whom Meredith might purchase stock. If, on account of any fiduciary relation between Meredith and the stockholders, the latter could avoid their sale to him, it was for them to act, not Stratton. Contracts which are voidable and not void can only be avoided by the party who has a right to complain.

There is not a scintilla of evidence that Meredith violated any duty he owed to the Mars company, or its stockholders, by reason of his relation to the com-

pany; but even if there were, the stockholders could affirm any contract or transaction entered into under Meredith's employment by Stratton, even though induced by the former in such circumstances as would in law be a breach of duty on his part, because contrary to good conscience and equity. Contracts of this character may be confirmed by those whom they directly affect, for they, alone, are concerned. Such contracts are neither opposed to statute, public policy, nor good morals; and neither the state, society, nor third parties can raise any question regarding them. —2 Pomeroy's Equity, § 964.

The judgment of the district court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE BAILEY concur.