## No. 13,932.

Estate of Wise.

Wise *v.* Wise.
(64 P. [2d] 594)

Decided January 11, 1937.

Messrs. HAWKINS & HAWKINS, Messrs. HICKS & HICKS, for plaintiff in error.

Mr. FRANK L. FETZER, for defendants in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

A DETERMINATION of the questions raised in this action depend upon the construction of a separation agreement between Charles R. Wise and Ethel Eugenie Wise, husband and wife. The husband died intestate September 30, 1934. The surviving widow, his sole and only heir at law, made claim against his estate based on the separation agreement for a continuation to her of the monthly payments provided therein. The defendants in error, a brother and sister of Wise and next of kin, petitioned the county court in the estate matter to have the wife's claim, which had been allowed, set aside. On hearing the petition was granted, an appeal was taken by claimant to the district court where judgment was entered against her and in favor of the petitioners. To reverse the judgment, she prosecutes this writ. Reference herein will be made to plaintiff in error as claimant, to the defendants in error as petitioners, and to Wise as decedent.

This case was submitted in both the county and district courts solely upon the construction of the separation agreement, no evidence being offered. Decedent and claimant were married October 18, 1918, and no children were born of the marriage. A number of temporary separations occurred prior to May 1, 1934, at which time, due to unhappy differences, they again separated and so remained until August 3, when, determining that the separation would be permanent, they entered into the agreement involved herein.

September 30, 1934, Wise died, his widow was ap-

pointed administratrix of his estate October 16, and so acted until November 8, 1934, when she resigned. November 20, she filed her claim against the estate which, as before stated, was approved and allowed by order of the county court. January 8, 1935, petitioners, in appropriate proceedings, prayed for removal of the administrator and for a vacation of the order allowing the claim. Their petition was answered February 2 by Oliver G. Jones, then administrator, and he attached thereto a copy of the separation agreement. On the issues thus joined, the county court March 1, denied the petition and directed claimant's counsel to prepare an order accordingly. The order was prepared, but it appears that it never was signed by the court. August 25 following, petitioners served notice on counsel for claimant to have the cause set for a hearing on the claim and on their petition. Over objections of claimant's counsel, the court ordered a rehearing to be had September 12, 1935. Claimant then filed her answer wherein she based her claim upon the separation agreement. After presentment and argument November 18, 1935, the county court granted the petition, set aside the allowance of the claim and declared petitioners to be the sole and only heirs at law of the decedent. Appeal to the district court was promptly taken and January 21, 1936, that court entered its order, the effect of which is an affirmance of the order of the county court from which the appeal was taken.

The separation agreement is a well prepared, lengthy document, containing ten recitals and about a like number of covenants. There is no intimation of duress or fraud practiced upon, or by, either of the parties to the contract, and it is apparent from their certification, that each read the contract, that it had been explained to them by counsel, that they understood all the terms and provisions thereof, and that with such understanding they signed, executed and acknowledged the document before a notary public. It is not necessary to recite all of the

numerous details of the agreement, but as explanatory of the intentions, purpose, and complete understanding of the parties in making it, the following recitals are pertinent:

"Whereas, the title to the residence property at 620 St. Paul Street, Denver, stands in the name of the second party, but is encumbered in the sum of Three Thousand Three Hundred Dollars ($3300.00), with interest at the rate of six per cent per annum, payable quarterly, which encumbrance carries with it the further requirement that Two Hundred Dollars ($200.00) per annum be paid in installments of One Hundred Dollars each on the 22nd days of March and September of each year; and,

"Whereas, second party is required out of any maintenance, property settlement, alimony or support money paid to her, not only to take care of the requirements of said encumbrance, but is required to pay general taxes, fire insurance, water rentals, heating expenses and repairs on said property; and,

"Whereas, it is the desire of the first party to make provision for the support and maintenance of the second party *during her life-time,* while she is living separate and apart from him, as a property settlement with her, and while she is unmarried to any other than him, and this, regardless of whether or not the second party does or does not institute a divorce action; and,

"Whereas, it is further the desire and wish of both of the parties hereto that if any divorce action is instituted by either party hereto, there be no controversy in court concerning the matter of a property settlement or of either permanent or temporary alimony or attorney's fees in connection with such divorce action or actions; and,

"Whereas, it is the desire of both parties hereto that the further matters hereinafter set forth, as well as those hereinbefore mentioned, shall be forever settled, concluded and determined by an agreement in writing between the parties hereto.", etc.

These in turn are followed by the operative promises or covenants, which if unambiguous must control. Such as are here involved are:

"Now Therefore, * * * in consideration * * * of One Dollar * * * paid by each * * * and * * * in consideration of the mutual covenants and agreements hereinafter contained * * * it is * * * agreed:

&ast; &ast; &ast;

"(a) Until such time as second party shall be able to sell and dispose of the family residence above mentioned, at a satisfactory price and be relieved of the burden of the encumbrance thereon, said first party shall pay to said second party the sum of One Hundred Twenty-five Dollars ($125.00) per month, in cash, in payments of Sixty-two and 50/100 Dollars on the first and fifteenth days of each and every month, and after the sale of said house, as above provided, he shall then pay to second party the sum of One Hundred Dollars ($100.00) per month, in payments of Fifty Dollars ($50.00) on the first and fifteenth days of each and every month, so long as second party shall live; Provided, however, that if at any time in the future a divorce is granted between the parties and the second party remarries, then and in that event, no payment of said monthly sum is to be made to the second party after the calendar month in which she remarries, * * *

&ast; &ast; &ast;

"5. The first party hereby waives and releases any and all right in and to any and all property owned by the second party, real, personal or mixed, including any property by her acquired under the terms of this agreement or under the trust established in pursuance hereto, and wheresoever situate, whether the same has been heretofore or shall hereafter be acquired, and waives all right to inherit from second party under the laws of any and all states of the United States, or the laws of any other country, and he agrees that he will make no claim of any kind to any interest in any property of which second

party may die the owner, and will make no claim of any kind whatever against her estate or her administrator or executor in the event of her death.

"6. The party of the second part hereby waives and releases any and all right in and to any and all property now owned by the first party, real, personal or mixed, wheresoever situate, whether the same has been heretofore or hereafter acquired, except as to the sums and amounts herein to be paid monthly to second party, the benefits to accrue to her as beneficiary under said Aetna Life Insurance Policy and her right to the said nine thousand five hundred shares of the capital stock in the Dental Specialty Company, held for her by the Trustee, George J. Charpiot of Denver, Colorado, as her agent, and waives all right to inherit from first party under the laws of any and all states of the United States, or any other country, any of the property of which first party may die the owner, or any widow's allowance, and agrees that she will make no claim of any kind to any of said property save and except the sums and amounts to be paid to her monthly hereunder and the property hereinbefore conveyed and/or assigned to her."

Summarized, the contentions of the parties are as follows: Petitioners insist that the agreement must be construed to mean that the monthly payments provided therein were to continue only during the life of decedent, and not to survive as against his estate, while claimant urges the construction should be to the end that the agreement was to make these payments for her maintenance during her lifetime, and while she remained unmarried, that they constituted a charge against the estate of the husband in the event of his death. Petitioners further rely upon waiver, and claimant upon the exception contained in covenant No. 6.

By covenant No. 5, the husband made an *unconditional* waiver of all right in and to all property then owned by the wife or thereafter to be acquired by her, and all right

to inherit from her under any law, as well as any right to make claim against her estate in the event of her death.

■ ■ Without violating any principle of public policy, these parties clearly had the right to enter into an agreement for the equitable disposition of their property, one to the other. The resulting benefits are to them exclusively. A provision for the support and maintenance of the wife during her lifetime was a proper subject to be considered. The security of such provision may be had by conveyance or contract. This being so, who can say that the husband does not have the lawful right to obligate himself or his estate to that end, or that he was not privileged to stipulate in such a contract or agreement that his estate was not to be so bound? Of course it is to be understood that we are speaking of agreements—such as the one here involved—not induced by fraud or duress. After all, when such contracts are made in good faith, upon valid passing considerations, who is entitled to first consideration more than the survivor? The contract here executed by the husband was not an obligation of a personal nature, but one in furtherance of his legal and moral duty, enforceable against him in his lifetime, therefore enforceable against his estate. *Briggs v. Chamberlin,* 47 Colo. 382, 107 Pac. 1082.

Aside from the authorities, the agreement on its face shows that the eventuality of the death of either party was a matter contemplated by the parties and one which entered into the formation of the consideration upon which the contract rested. Covenant No. 5 above quoted discloses that the event of the death of the wife also was considered, because the husband *unconditionally* waived the right to make any claim against her estate, and covenant No. 6, in unmistakable language, reveals a consideration of the eventuality of the husband's death, in that the wife *conditionally* waived her right to claim against his estate upon the consideration that she was permitted to reserve to herself the right to claim the sums and amounts to be paid to her monthly under the agree-

ment.   This is an unambiguous direction concerning the husband's estate, which would not be present, or have any place in the contract if the agreement was, as between the parties, intended to be effective only during the lifetime of either.   Undoubtedly this right of the wife, as disclosed by the terms of the contract, was the moving consideration for the relinquishment therein made of her right to inherit as the sole heir at law or to receive the benefits of a widow's allowance.   It is not for us to write into this agreement a meaning that the payment of money monthly to the wife expired with the death of the husband, when the parties themselves, after due consideration with full opportunity to act, and under no constraint, did not elect to so write for themselves.   Petitioners should not be allowed to appropriate to their benefit all of the effects of the wife's waiver contained in covenant No. 6, and deny to her the benefit of the consideration for making such waiver which is saved to her in the same paragraph.

The judgment is reversed and the cause remanded with instructions to enter judgment of allowance of claimant's claim at the cost of petitioners.

MR. JUSTICE BOUCK not participating.