NELSON WERLING, Plaintiff-Appellant, *v.* NELDA GROSSE *et al.*, Co-Executors of the Estate of Julia Crocker Horine, Defendants-Appellees.

Fifth District   No. 79-40

Opinion filed September 12, 1979.

Sprague, Sprague & Ysursa, of Belleville (Robert J. Sprague, of counsel), for appellant.

Cornelius Thomas Ducey, Jr., of Ducey & Feder, Ltd., of Belleville, for appellees.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiff, Nelson Werling, brought this action in the Circuit Court of Monroe County seeking specific performance of an alleged oral contract for the sale of land previously owned by Julia Crocker Horine, deceased, or seeking, in the alternative, a ruling that he is entitled to the property under the decedent's last will and testament. From a judgment in favor of the co-executors of the estate of Julia Crocker Horine, plaintiff appeals.

In his complaint, plaintiff alleged that he and decedent entered into an oral contract in 1973 for the sale of her farm in Monroe County to plaintiff for a purchase price of $20,000. At trial, it was established that plaintiff had been farming the land in question on shares from 1950 until the present. Ms. Horine, who apparently lived on a small portion of the farm until her death in the fall of 1976, had become rather dependent upon Mr. Werling in her later years. Whenever there were problems with the household or land, Mr. Werling would take it upon himself to do all the necessary repairs. His wife did Ms. Horine's shopping and laundry and brought her food when she injured her leg.

Ms. Horine died, leaving a will which was admitted to probate and which contained the following provision:

> "Fifteenth—Having by agreement and deed sold my farm home property to Nelson Werling for the sum of Twenty Thousand Dollars it is my will that any balance that may be due to me at my death shall be paid by said Nelson Werling to the Lighthouse for the Blind now located at 2321 Locust Street, St. Louis, Missouri * * *."

The estate inventory listed only the property which is the subject of this lawsuit, and it was stipulated at trial that Ms. Horine owned only one farm.

C. B. Morrison, the attorney who prepared the will in 1975, testified by deposition that paragraph 15 was added at Ms. Horine's request. When counsel for plaintiff sought to admit into evidence the attorney's testimony concerning what decedent had told him about a real estate agreement, defendant objected. The trial court sustained the objection on the grounds of hearsay but permitted the following offer of proof:

> "Q. Did she tell you that she had an agreement and deed to sell her farm to Nelson Werling for $20,000.00?
> A. Yes Sure.

* * *

Q. Did she then instruct you as to what was to be done with the balance due from Mr. Werling if it had not been paid at the time of her death?

A. Yes."

Mr. Morrison also testified that he did not remember preparing a deed for the conveyance of the farm.

Earl Parrin, an employee of plaintiff from 1965 to 1969, testified that he visited Ms. Horine in August of 1974 to ask her whether she would be interested in selling "a piece of ground out there." When the trial court thereafter sustained defendant's objection to and refused to admit Mr. Parrin's testimony concerning what Ms. Horine had then told him, counsel for plaintiff made another offer of proof:

"Q. What did she tell you?

A. She told me she made previous arrangements to sell the property to Nelson Werling."

On cross-examination, however, defense counsel chose to ask Mr. Parrin about the alleged "arrangement" with plaintiff:

"Q. Did she tell you what the terms of those arrangements were?

A. No, she didn't.

Q. She just made a statement, made other arrangements?

A. She said she made other arrangements to sell the property to Nelson Werling."

Judge Alvin Maeys, an acquaintance of decedent, testified that he visited her at her home in 1973 or 1974. At that time, Ms. Horine indicated that she had a close relationship with the Werling family and wanted Mr. Werling to have the house and land. Again defense counsel objected and plaintiff made another offer of proof as follows:

"Q. What was the disposition, or what did she state to you?

A. She wanted all the real estate to go to Mr. Werling, but he was to pay a certain sum of money for that real estate, and at that time that sum of money was so unrealistic as to my consideration of the value * * *.

* * *

The sum of money which she designated that Mr. Werling was to pay * * * was unbelievably low in relationship to what I considered to be fair cash market value of that property * * *.

Q. Did she say anything about what happens to the money if not paid to her prior to her death?

* * *

A. All I really recall there was some eleemosynary institution to receive this money by her Will, that was really the impression I got.

* * *

Q. Did she tell you why she was going to let him have it for a low price?

* * *

A. She told me she was doing this because Mr. Werling had always taken care of her, and also that Mr. Werling's father had participated in taking care of her. And she also said that Buck, what she called him and what I call him, had kept the land by keeping it in tillable or fertilizable condition."

On cross-examination, Judge Maeys testified that it was Ms. Horine's intention that Nelson Werling receive the farm.

Plaintiff did not testify as to the alleged agreement with decedent, having been precluded from doing so because of the prohibition of section 2 of the evidence act. Ill. Rev. Stat. 1977, ch. 51, par. 2.

The trial court found that no contract for the sale of real estate was made between plaintiff and Ms. Horine; that plaintiff has no obligation to pay any monies to either the estate or to the Lighthouse for the Blind; and that the estate has no obligation or duty to convey the property to plaintiff. Accordingly, it held that plaintiff was not entitled to specific performance and did not take any interest in the property pursuant to paragraph 15 of the will.

On appeal, plaintiff argues, in essence, that decedent intended to and did in fact devise the farm to him subject to the charge that certain monies were to be paid to the Lighthouse for the Blind. In the alternative, he argues that the evidence established a contract between him and decedent for the sale of the property and a written memorandum sufficient to take the case out of the Statute of Frauds, thereby entitling him to specific performance of the asserted agreement. Lastly he argues that the trial court erred in refusing to admit the testimony of Judge Maeys, Earl Parrin and C. B. Morrison to the effect that Ms. Horine sold her farm to Nelson Werling.

Defendants argue that plaintiff failed to raise the issue concerning the testamentary disposition of the farm in the trial court and has therefore waived this issue on appeal. In the alternative, they contend that decedent had no intention to devise the farm property to plaintiff and did not do so by her will. They further argue that plaintiff has failed to prove the existence of any oral contract to convey the real estate in question and argue that, in any event, the memorandum was insufficient and too indefinite to take the alleged contract out of the Statute of Frauds.

■■ We first note that plaintiff has not waived the issue of the will construction where he first raised it in his amended complaint, where he presented evidence of testator's intent indicating that plaintiff should receive the property, and where the trial court expressly ruled in its written order that plaintiff takes no interest under the will. Plaintiff,

therefore, having received an adverse ruling on this issue, is permitted to raise it on appeal.

■■ In a discussion of the substantive issues of the case, plaintiff argues that the language of paragraph 15 of the will and the extrinsic evidence introduced at trial clearly evince an intention on the part of testator to devise the property in question to plaintiff. This clear expression of intent, plaintiff contends, combined with the strong presumption that the testator intended to dispose of all her property by will and not in any part by intestacy (see *Schroeder v. Benz* (1956), 9 Ill. 2d 589, 138 N.E.2d 496), was sufficient to establish a devise by implication. Although plaintiff, we believe, presents a strong argument for construing paragraph 15 as creating a devise of the property to plaintiff, the case law and the authorities have reached the opposite conclusion. It has been long ago established in this State

> "* * * that where a recital in a will is to the effect that the testator has devised something in another part of the will when in fact he has not done so, the erroneous recital may operate as a devise by implication of the same property, for the reason that it shows an intention to devise the property by the will; but where the recital is to the effect that the testator has by some other instrument given to a certain person named in the recital, property, when in fact he has not done so, such a recital does not disclose an intention to give by the will, and in such case resort must be had to the other instrument and not to the will." (*Noble v. Tipton* (1905), 219 Ill. 182, 186-87, 76 N.E. 151.)

(See also *Lander v. Lander* (1905), 217 Ill. 289, 75 N.E. 487; *Stodder v. Hoffman* (1895), 158 Ill. 486, 41 N.E. 1082; *Benson v. Hall* (1894), 150 Ill. 60, 36 N.E. 947; *Hunt ex rel. City of Streator v. Evans* (1890), 134 Ill. 496, 25 N.E. 597.) This interpretation of the effect of an erroneous recital that a testator has made a disposition of the property belonging to him by some instrument other than the will is consistent with the case law in other jurisdictions (see *In re Garrison's Estate* (Mo. 1964), 374 S.W.2d 92; *Witham v. Witham* (1937), 156 Or. 59, 66 P.2d 281; 80 Am. Jur. 2d *Wills* §1386 (1975); Annot., 110 A.L.R. 216 (1937)) and with the major treatise on the subject. (See Page on Wills (1961).) For example, in Page on Wills, the author states:

> "Where the testator in his will recites erroneously that he has conveyed certain of his real estate by deed to a certain named person, it does not show an intention to dispose of the property by will, but merely testator's opinion as to the legal effect of some pre-existing instrument. If, therefore, such pre-existing deed is for any reason invalid, the reference to it in the will cannot be held to amount to a devise by implication of the property described in

such deed to the grantee therein." 4 Page on Wills §30.18 (1961).

In *Noble v. Tipton*, the testator recited in his will that "[t]he remainder of my estate, both real and person, excepting the home farm \* \* \* which I have heretofore deeded to my son Thomas Noble, I give, devise and bequeath to my sons Robert Noble, Thomas Noble and John W. Noble, share and share alike." (219 Ill. 182, 186.) At trial, it was established that the testator clearly intended for his son Thomas to have the farm and that the testator had executed a deed but had failed to make a proper delivery. The court held that the conveyance of the property by deed was invalid for failure of delivery and also held that the above recital in the will could not be given the effect of a devise. Thomas, the son, made the same argument to the court as is made by the present plaintiff, without success, namely, "that the testator could not be presumed to intend to die intestate as to any part of his property, and that by the will he evinced an intention to devise the farm to his son Thomas, who would therefore take it by implication under the will." 219 Ill. 182, 186, 76 N.E. 151, 152.

■■ On the strength of the harsh rule as set forth in *Noble v. Tipton*, we are compelled to hold that the recital in paragraph 15 of the last will and testament of Ms. Horine cannot be construed as creating a devise of the farm property to plaintiff. We, therefore, turn to the alleged contract itself and its terms to determine whether plaintiff is entitled to the remedy of specific performance.

■■ Defendants first argue that plaintiff has failed initially to establish the existence of a valid contract between plaintiff and Ms. Horine and thus cannot seek performance of an agreement which does not exist. We disagree. We believe there was ample evidence from which a court may infer the existence of a valid contract. The declarations of Ms. Horine that she had transferred the property to Mr. Werling were admissible as declarations against her interest and therefore could be considered evidence of a contractual arrangement between these persons. (See *Allen v. Shires* (1910), 47 Col. 382, 107 P. 1070; *Ottinger v. Brown* (1957), 43 Tenn. App. 44, 306 S.W.2d 5.) As stated in Wigmore, "[a] statement predicating of oneself a limited interest instead of a complete title to property asserts a fact decidedly against one's interest, and has always been so regarded." (5 Wigmore, Evidence §1458 (1974).) See also 31A C.J.S. *Evidence* §219(c) (1964), in which it is stated:

> "In a proper case, declarations of persons in possession of land against their proprietary interest therein may be received in evidence. Thus a declaration may be admitted where a person in actual possession of realty under an apparent claim of ownership concedes that \* \* \* he had conveyed it by deed to another \* \* \*."

■■ Furthermore, although the recital in paragraph 15 of the will failed as a testamentary disposition, a contract to convey real estate may be manifested and proved by the language contained in that document. (Compare *Hunt ex rel. City of Streator v. Evans.*) The language of the will, therefore, need not be the contract itself but may indicate or suggest that a contract exists. In the present case, the recital in the will established that Ms. Horine believed she had previously entered into an agreement with plaintiff to sell the farm property for $20,000. This manifestation of belief that an agreement existed in conjunction with the deceased grantor's declarations was more than sufficient to establish the existence of an oral contract.

■■ The remaining question, therefore, is whether the terms of the agreement are sufficiently set forth in writing to warrant the application of specific performance. The general rule in this State is that a contract for the sale of real estate cannot be specifically enforced by a court unless the writing evidencing the agreement contains the names of the seller and purchaser, a description of the property sufficiently certain so that it can be identified, the price of the property, the terms and conditions of sale and the signature of the party to be charged. (*Cefalu v. Breznik* (1958), 15 Ill. 2d 168, 154 N.E.2d 237; *McDaniel v. Silvernail* (1976), 37 Ill. App. 3d 884, 346 N.E.2d 382.) There is no question that the memorandum of the contract identifies the parties to the agreement, is signed by the seller and lists the purchase price. While the property is described only as "my farm," it is sufficiently identified in the present context to satisfy the Statute of Frauds. Under the rule set forth in *Ashline v. Verble* (1977), 55 Ill. App. 3d 282, 370 N.E.2d 613, "an instrument will not be rendered ineffective for uncertainty of the premises to which it relates if by the aid of extrinsic evidence it can be made certain and the property located." (55 Ill. App. 3d 282, 284, 370 N.E.2d 613, 615.) In this case, it was clearly established that Ms. Horine's real estate holdings consisted of the one farm in question. The statement in paragraph 15, though not providing a legal description of the property, was nevertheless sufficient to identify the farm as there was no other real estate to which the statement could relate.

■■ Defendants, however, argue that plaintiff is not entitled to specific performance of an agreement which is uncertain in its terms and does not specify the day the sale was to be completed. (*Wright v. Raftree* (1899), 181 Ill. 464, 54 N.E. 998; *Cefalu v. Breznik; Davito v. Blakely* (1968), 96 Ill. App. 2d 196, 238 N.E.2d 410.) It is generally true that "[t]he manner or method of payment is an essential part of an agreement for the purchase of real estate, and the contract must specify not only the price but the terms and conditions of the sale" (*Cefalu v. Breznik*, 15 Ill. 2d 168, 170, 154 N.E.2d 237, 239); however, we find in the supreme court case of

*Ullsperger v. Meyer* (1905), 217 Ill. 262, 75 N.E. 482, the court's willingness to grant specific performance of an oral contract to convey real estate which did not specify a time for closing or transfer of title or the method or manner of payment. In *Ullsperger*, the sole memorandum of the contract provided:

> "Received of Anton Ullsperger [purchaser] $100 on said purchase of the property No. 1031 Milwaukee ave., at the price of $14,000.
>
> C. Meyer [seller]."

The court, in holding the memorandum sufficient to take the contract out of the Statute of Frauds, stated that where time is not made the essence of the contract the law will imply that the contract be performed within a reasonable time. (217 Ill. 262, 267, 75 N.E. 482, 484. See also *Gerald Elbin, Inc., v. Seegren* (1978), 62 Ill. App. 3d 20, 378 N.E.2d 626; *Yoder v. Rock Island Bank* (1977), 47 Ill. App. 3d 486, 362 N.E.2d 68.) Thus, it appears that a contract to convey real estate is not unenforceable merely because it does not specify the time in which performance should take place or fails to define the time or manner of payment.

In *Cefalu*, a case strongly relied upon by defendants, the court reversed a lower court's decree granting specific performance of an alleged contract to convey real estate where there was ambiguity and uncertainty with respect to the terms and conditions of the sale. The memorandum in that case provided for a sale price of $6,000 with a down payment of $2,000 and the balance to be paid in monthly installments. In *Cefalu*, the court was unable to determine the amount or the duration of the monthly payments and properly held that the contract was "so indefinite and uncertain in its terms that the plaintiff was not entitled to specific performance." (15 Ill. 2d 168, 171, 154 N.E.2d 237, 239.) But, in the present case, the contract did not provide for deferred payments and was not in any manner ambiguous in its terms although it failed to provide when and how payment was to be made. The missing terms of the agreement, we believe, should not be fatal to the contract and the granting of specific performance where testator has expressed an unequivocal intent to convey the farm property for $20,000; where she and plaintiff entered into an agreement to convey that property; and where it was stipulated at trial that plaintiff was ready, willing and able to perform his part of the agreement. Accordingly, we decline to extend the often harsh and mechanical rule set forth in *Cefalu* to the present case and hold that plaintiff is entitled to specific performance of the contract upon tendering the full purchase price.

■■ Lastly, we find no indication that the Lighthouse for the Blind, the alleged beneficiary of the proceeds of the sale, was ever notified of or made a party to this proceeding or the proceeding involving the probate

of the will. We therefore make no decision regarding the charity's interest in or title to these funds but hold that it, as an interested party, must be properly notified of any action involving the sale proceeds so that it can litigate the matter fully upon remand.

For the reasons stated, the judgment of the Circuit Court of Monroe County is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

KUNCE and KASSERMAN, JJ., concur.