MELROSE PARK NATIONAL BANK, Trustee, *et al.*, Plaintiffs-Appellees, v. ROBERT O. CARR *et al.*, Defendants-Appellants.

First District (5th Division)   No. 1—91—0007

Opinion filed June 25, 1993.

10

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Cynthia G. Swiger, of counsel), for appellants.

Joseph E. Fitzgerald, of Hinsdale, for appellees.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

Defendants James Bambrick and Bambrick & Bambrick (hereinafter collectively defendant or Bambrick) appeal from an order of the circuit court, in which the court found that defendant had breached an escrow agreement and awarded plaintiff Raymond Massey damages in the amount of $45,000. For the reasons set forth below, we affirm.

FACTS

Plaintiff Raymond Massey was the beneficial owner of trust No. 2541 at Melrose Park National Bank, which held legal title to a single-family home located in Lemont, Illinois. In November of 1983 Massey entered into a real estate sales contract for the sale of this home under articles of agreement for deed with defendants Robert O. Carr and Jill A. Carr. The purchase price for the home was $230,000. The contract provided for a down payment of $50,000, the remainder of the purchase price to be financed by Massey at the rate of $5,000 per month beginning on March 1, 1984. Pursuant to the contract, the Carrs deposited $5,000 as earnest money with Adams & Meyers Realtors, the real estate broker, and also executed a $45,000 judgment note payable to "Adams & Meyers Realtors agent for Raymond Massey" as additional earnest money which was redeemable at closing. The sales contract also provided that in the event the contract was terminated due to the fault of the buyers, the earnest money would be retained by the seller. This $45,000 represented the balance due as down payment under the articles of agreement for deed. Under the articles, if, after closing, the buyers defaulted by failing to pay any installment when due, the seller was given the option of retaining all sums paid by the buyers as liquidated damages. Closing was scheduled for February 1, 1984.

In mid-December 1983, the Carrs requested preclosing possession of the home. Plaintiff, however, was reluctant to allow this, as his inability to obtain financial information on the Carrs caused him to feel

somewhat insecure about their ability to complete the transaction. To allay these fears, plaintiff and his attorney suggested to the Carrs that the $45,000 note held by Adams & Meyers be redeemed, with the cash to be held by the realtors. The Carrs rejected this proposal. Eventually it was agreed that $45,000 in cashier's checks would be held by the Carrs' attorney, Bambrick. Receipt of the cashier's checks in the amount of $45,000 was acknowledged by Bambrick in a letter to plaintiff's attorney Casper dated December 16, 1983: "This will confirm my earlier telephone conversation with you that I am holding the sum of $45,000.00 in cashier's checks at my office regarding the proposed agreement for deed between Raymond Massey and Robert Carr at 16 Horseshoe Lane, Lemont, Illinois." On December 16, 1983, plaintiff allowed the Carrs to move into the house, and the Carrs paid plaintiff $4,000 for rent through February 1, 1984.

The scheduled February 1, 1984, closing did not occur because the Carrs were unable to attend. The closing was rescheduled for February 6, 1984, but again the transaction did not close. The closing was again rescheduled, this time for February 9, 1984.

On February 8, 1984, the Carrs' attorney, Bambrick, informed plaintiff's attorney that the Carrs would be unable to close on the 9th because they did not have the money required for the closing. Bambrick then informed plaintiff's attorney that he had returned to the Carrs the $45,000 in cashier's checks which the Carrs had given him on December 16, 1983.

Subsequently, plaintiff granted three extensions to the Carrs to allow them time in which to close, the first until March 1, 1984, and a second extension to April 1, 1984. On April 2, 1984, Massey and the Carrs executed an amendment to their real estate sales contract which extended the time of closing to June 1, 1984, or if closing did not occur by that date, to December 31, 1984.

By the fall of 1984, the Carrs stopped making rental payments but refused to vacate the house. In February 1985, plaintiff filed a notice of forfeiture and demand for possession. The property eventually went into foreclosure and was sold by sheriff's sale for $152,882.98 in June 1986. Plaintiff subsequently redeemed the property, and the court vacated and set aside the judgment of foreclosure.

This action was filed by plaintiff in March 1985, against the Carrs, the realtors, Adams & Meyers, and against Bambrick. A default judgment was entered against the Carrs on February 29, 1988, in the amount of $101,024.99, which remains uncollected because the whereabouts of the Carrs are unknown. The realtors were dismissed from the action after tendering to the court the $5,000, plus interest,

which they had held as earnest money. The only remaining count, and the subject of this appeal, is the one against Bambrick based upon his unilateral act of returning the $45,000 to the Carrs. In the complaint, plaintiff sought an order requiring Bambrick to turn over the fund held in escrow as liquidated damages, or in the event that the escrow funds had been improperly released, a judgment against Bambrick in the amount of $45,000.

Following a trial held in January 1990, the trial court entered a memorandum of opinion on February 27, 1990, in which the court found that there was an escrow agreement between the parties which Bambrick breached by returning the money to the Carrs. In reaching this conclusion, the court stated that it relied on *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 74, 199 N.E.2d 769, for the proposition that liability can arise from the negligent performance of a voluntary undertaking. Although finding that plaintiff was damaged by the breach, the court stated that it "has no information on which to base the amount." No judgment order was entered at this time, and the memorandum of opinion did not provide for the award of damages to the plaintiff.

On March 27, 1990, plaintiff filed a "Motion for Rehearing or in the Alternative for a Retrial on the Issue of Damages." In that motion, plaintiff requested "an order modifying the judgment of February 27, 1990, so as to reflect the awarding of [$45,000] as damages to the Plaintiff, or in the alternative for a Rehearing or Retrial as to the issue of damages." On October 31, 1990, the trial court issued a second memorandum of opinion, which provided:

> "The Court issued a Memorandum on February 27, 1990 in this matter, but did not assess damages due to some confusion regarding the amount asked for.
> At all times since the trial, the Court was aware the forty five thousand ($45,000.00) amount was due to the plaintiff.
> The memorandum of October [*sic*] 27, 1990, is modified to reflect the awarding of forty five thousand ($45,000.00) in damages to the plaintiff."

On November 30, 1990, the trial court entered a judgment order in the amount of $45,000 in favor of the plaintiff. Defendant filed his notice of appeal from the November 30, 1990, judgment on December 27, 1990.

OPINION

On appeal, defendant raises numerous issues. He contends that: (1) it was error for the trial court to find that an escrow agreement

existed between the parties; (2) if an escrow agreement existed, it was error for the trial court to find that the agreement was enforceable under the Statute of Frauds (Ill. Rev. Stat. 1991, ch. 59, par. 2); (3) if an escrow agreement existed, Massey waived the condition precedent requiring the deposit of $45,000 with Bambrick; (4) it was against the manifest weight of the evidence that Massey suffered any damages as a result of Bambrick's alleged breach; and (5) the trial court erred in considering Massey's post-trial motion because (a) the motion was nothing more than a notice of motion and therefore insufficient to toll the statute for filing a notice of appeal, and (b) Massey was not entitled to present evidence pursuant to section 2—1203 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1203).

We shall first address defendant's contention that the trial court erred in finding that an escrow agreement existed between the parties. He argues that plaintiff has failed to prove that there was an agreement between Massey and the Carrs with respect to an escrow deposit with Bambrick, and that no conditions of delivery were established or communicated or agreed to by Bambrick. In defendant's view, the court here went beyond interpretation of ambiguous terms of an escrow agreement, instead creating essential terms.

■ A valid escrow agreement requires an agreement between a grantor and a grantee as to the conditions of deposit, delivery of the deposited item to the escrowee, and communication of the agreed upon conditions to the escrowee. (*Johansson v. United States* (5th Cir. 1964), 336 F.2d 809.) Questions involving the operation of an escrow may be resolved by consideration of the escrow agreement in conjunction with the underlying contract. (*First National Bank v. Lachenmyer* (1985), 131 Ill. App. 3d 914, 476 N.E.2d 755; *Estate of Reinhold v. Mansfield* (1980), 90 Ill. App. 3d 224, 412 N.E.2d 1146.) Whether an agreement exists and the construction to be given to ambiguous terms are questions of fact which will be upheld on review unless against the manifest weight of the evidence. (*First National Bank v. Lachenmyer*, 131 Ill. App. 3d 914, 476 N.E.2d 755; *John Allan Co. v. Neuendorf* (1978), 60 Ill. App. 3d 559, 377 N.E.2d 365; see also *Howard A. Koop & Associates v. K P K Corp.* (1983), 119 Ill. App. 3d 391, 457 N.E.2d 66.) For the judgment to be against the manifest weight, it must appear that conclusions opposite to those reached by the trier of fact are clearly evident. (*John Allan Co. v. Neuendorf*, 60 Ill. App. 3d 559, 377 N.E.2d 365.) From our review of the record, we cannot say that the conclusions reached by the trial court are against the manifest weight of the evidence.

The trial court found that there was an escrow agreement between the parties. As stated in the court's memorandum of opinion, this finding was based upon several facts revealed at trial. Bambrick was an attorney who, according to his own testimony, closed approximately 300 real estate deals per year. Bambrick was asked to "hold" $45,000 at his office regarding the proposed real estate deal. He acknowledged in his letter to Massey's attorney that he was "holding the sum of $45,000.00 in cashier's checks at my office regarding the proposed agreement for deed" between Massey and the Carrs. From these facts, the trial court concluded that "[a] reasonable person would say 'For what purpose?' and the reasonable answer would be 'as an escrow for the agreement deed.'" The trial court's conclusion is not against the manifest weight of the evidence.

■ We cannot agree with defendant's contention that he had no obligation to hold the cashier's checks for any definite period of time and could have returned the checks to the Carrs the day after he received them. Such an interpretation would be inconsistent with plaintiff's requiring the deposit of the money as an assurance that the Carrs would be able to close the transaction in February. Defendant's explanation would render the arrangement meaningless as a device for protecting plaintiff's interest under the real estate contract. (See *McBride v. Commercial Bank* (1981), 101 Ill. App. 3d 760, 764-65, 428 N.E.2d 739 (where appellate court "totally rejects" trial court's construction of escrow agreement that in absence of instructions as to whom documents were to be delivered, escrowee could deliver documents in its possession to the party of its choice, finding that such a construction "would render it entirely meaningless as a device for protecting plaintiff's interests under the contract").) The fact that the Carrs were able to come up with $45,000 in cashier's checks in December does little to ensure that they would be able to produce that same amount at the closing in February.

In addition to rejecting defendant's argument that the trial court erred in finding that an escrow agreement existed, we also must reject defendant's second argument on appeal, namely, that the escrow agreement is unenforceable under the Statute of Frauds. Ill. Rev. Stat. 1991, ch. 59, par. 2.

■ Although defendant is correct in his contention that under Illinois law, generally a written contract within the Statute of Frauds may not be modified by an oral agreement (see *Nelson v. Estes* (1987), 154 Ill. App. 3d 937, 507 N.E.2d 530), he is incorrect in his contention that the escrow agreement here constitutes such an oral modification. A writing sufficient to satisfy the Statute of Frauds need not itself be

a valid contract, but only evidence of one. (*Crum v. Krol* (1981), 99 Ill. App. 3d 651, 425 N.E.2d 1081; see also *Northmoor Estates, Inc. v. Board of Education of School District No. 108* (1965), 56 Ill. App. 2d 491, 206 N.E.2d 111 (abstract of opinion) (letter from vendor in course of negotiations was sufficient writing of memorandum of promise to take it out of Statute of Frauds).) The December 16, 1983, letter to Massey's attorney signed by Bambrick which makes reference to the contract between Massey and the Carrs clearly is a writing sufficient to satisfy the Statute of Frauds.

We turn next to defendant's contention that Massey waived the condition of the $45,000 deposit by his conduct after learning that Bambrick had returned the money to the Carrs. Defendant urges that by extending the closing date several times and by continuing to allow the Carrs to remain in the home for over a year, without demanding that the money be returned, he waived his right to the escrow.

A waiver is an "intentional relinquishment of a known right" (*Lempera v. Karner* (1979), 79 Ill. App. 3d 221, 223, 398 N.E.2d 224) and may be established by a party's conduct indicating an intent not to require strict compliance with a contract's terms. (*John Allan Co. v. Neuendorf*, 60 Ill. App. 3d 559, 337 N.E.2d 365.) It is an equitable doctrine "designed to prevent the waiving party from 'lull[ing] another into a false assurance that strict compliance with a contractual duty will not be required and then sue for noncompliance.' " (*Wagner Excello Foods, Inc. v. Fearn International, Inc.* (1992), 235 Ill. App. 3d 224, 233, 601 N.E.2d 956, quoting *Whalen v. K mart Corp.* (1988), 166 Ill. App. 3d 339, 343, 519 N.E.2d 991.) Whether waiver has occurred is a question of fact when the material facts are in dispute or where reasonable minds might differ in the inferences to be drawn from undisputed facts. *Wagner Excello Foods, Inc. v. Fearn International, Inc.*, 235 Ill. App. 3d 224, 601 N.E.2d 956.

The basic facts here are not in dispute. After learning in February that Bambrick had returned the cashiers' checks to the Carrs, Massey continued to negotiate with the Carrs in an attempt to close the sale of the house. The parties extended the date for closing three times. The Carrs continued to live in the house for almost a year after Bambrick returned the checks to them. Although defendant urges that plaintiff's conduct and failure to demand a redeposit of the funds or possession of the house constitute waiver, we disagree.

■ Nothing in plaintiff's conduct after he learned that Bambrick had returned the escrow funds to the Carrs compels the conclusion that he relinquished his right to enforce the escrow agreement. Plaintiff had no reason to pursue Bambrick until he knew that the transac-

tion with the Carrs would not close. He had not incurred any damages as a result of Bambrick's return of the checks until it became clear that the Carrs would not be able to complete the sale by tender of $45,000 at closing, either in cash or by redemption of the judgment note held by the real estate broker. Massey testified that "all along" he made demands for redemption of the judgment note. Moreover, nothing that plaintiff did after he learned that Bambrick had returned the checks to the Carrs could be construed as "lulling" Bambrick into believing that plaintiff would not demand strict compliance with the escrow agreement, since by that time, defendant had already breached the agreement. In addition, we cannot fault plaintiff for trying to avoid litigation by attempting to complete the sale of his home. Although the trial court did not make an explicit finding regarding waiver, waiver was argued below, and the court's judgment in favor of plaintiff obviously implies a finding that no waiver has occurred. Our analysis of the record does not indicate that this implied finding was against the manifest weight of the evidence.

Defendant's next contention is that the trial court erred in awarding Massey contract damages in the amount of $45,000, when the court's finding of liability was based on a tort theory of negligence. Defendant also argues that the award was erroneous since there was no evidence presented to establish damages of $45,000 caused by him.

We note initially that the plaintiff brought the action and argued the case under a contract, not a negligence theory. Moreover, defendant's argument that the court based liability solely on a theory of negligence ignores the court's explicit finding that an escrow agreement existed between the parties, and that Bambrick breached that agreement. When read as a whole, the trial court's opinion indicates that, notwithstanding the comments regarding negligence, the court found a breach of contract. We must look, therefore, to the proper measure of damages for breach of contract.

The policy of contract damages is to place the injured party in the monetary position he would have been in had the contract been performed. (*Crum v. Krol* (1981), 99 Ill. App. 3d 651, 425 N.E.2d 1081.) The measure of damages is the amount which will compensate the party for loss which either fulfillment of the contract would have prevented, or which breach has caused. (*LeFevour v. Howorka* (1991), 224 Ill. App. 3d 428, 586 N.E.2d 656.) The injured party should not, however, be placed in a better position than he would have been in had the contract not been breached, nor should he be provided a windfall. *Wilmette Partners v. Hamel* (1992), 230 Ill. App. 3d 248, 594 N.E.2d 1117.

■ Contrary to defendant's contention, at trial there was evidence presented regarding the amount of damages. The $45,000 deposited with Bambrick represented the remainder of the earnest money required as down payment for the house. The closing did not occur because the Carrs were unable to come up with that amount at closing. Had Bambrick not returned the cashier's checks to the Carrs, the closing would presumably have taken place, and Massey would have had the $45,000. Under the contract of purchase, if the Carrs had defaulted on the closing, Massey would have been entitled under the sales contract to retain the earnest money as liquidated damages. Thus, by returning the checks to the Carrs, Bambrick prevented the closing from occurring, and as a result deprived plaintiff of the money which he would have otherwise had. Moreover, under the articles of agreement for deed, had the transaction closed and the Carrs later defaulted, Massey would have been entitled to retain all moneys paid, including the $45,000, as liquidated damages.

As to the court's statement in its February 27, 1990, memorandum that it had no information on which to base damages, in its November 1, 1990, memorandum, the court stated that it did not assess damages in its initial memorandum, "due to some confusion regarding the amount asked for." The court went on to say that "[a]t all times since the trial, the Court was aware the [$45,000] amount was due plaintiff." Thus the court itself explained that its failure to indicate an amount of damages in its initial memorandum was due not to plaintiff's failure to present evidence but to some initial confusion on the court's part. As a result, we find no error in the ultimate award of damages here.

We turn now to defendant's contention that the trial court erred in considering plaintiff's post-trial motion under section 2—1203 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1203), which provides:

> "Motions after judgment in non-jury cases. (a) In all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1203.)

Defendant contends that the "motion" filed on March 27, 1990, was actually no more than a notice of a motion and thus insufficient to toll the statutory period for filing an appeal. As a result, defendant contends, the trial court's February 27, 1990, order became final and ap-

pealable on March 31, 1990, and the trial court was without jurisdiction to consider plaintiff's "motion" after that date. Defendant's second argument is that plaintiff was not entitled to present evidence pursuant to section 2—1203. We reject defendant's arguments because we reject his initial premise that section 2—1203 is applicable here.

■ By its own language, section 2—1203 applies to motions filed after a judgment has been entered. No judgment order was entered in this case until November 30, 1990, when the trial court entered judgment in favor of the plaintiff in the amount of $45,000. The memoranda of opinion, filed on February 27, 1990, and October 31, 1990, are not the equivalent of a judgment order. (*Stoermer v. Edgar* (1984), 104 Ill. 2d 287, 293-94, 472 N.E.2d 400, quoting *Freeport Motor Casualty Co. v. Tharp* (1950), 406 Ill. 295, 301 (" 'Before a pronouncement should be taken as the judgment, it must be clear that it was intended as such and not merely an announcement of the opinion of the court or an indication of what the judgment is going to be.' It has repeatedly been held that a memorandum signed by the judge cannot be taken or used as the record judgment"); see also *Davidson Masonry & Restoration, Inc. v. J.L. Wroan & Sons, Inc.* (1971), 2 Ill. App. 3d 524, 275 N.E.2d 654.) The February 27 memorandum does not purport to be a final judgment order, but rather is simply a statement of the court's findings of facts, and an announcement of the opinion of the court. The February 27 memorandum, although finding that an agreement existed, that defendant had breached the agreement, and that plaintiff was damaged by that breach, did not assess damages against plaintiff. Until November 30, 1990, there was no enforceable or appealable order or one which could be attacked by a post-trial motion. See *Archer Daniels Midland Co. v. Barth* (1984), 103 Ill. 2d 536, 538-39, 470 N.E.2d 290 (until judgment order is filed, judgment may "not be attacked by motion, appealed from, or enforced").

Defendant argues that "the import" of section 2—1203 is to allow motions after the trial is complete where a decision has been rendered even though a judgment has not been entered and thus is applicable here. However, the language of the statute and case law clearly indicate that the section is applicable only to motions filed after a written judgment order has been entered, and not to motions filed after a decision has been made but before judgment has been filed. (See *Canfield v. Delheimer* (1991), 210 Ill. App. 3d 1055, 569 N.E.2d 1260 (motion to reconsider trial court's order dismissing complaint, filed after judgment made orally but prior to date written judgment order was entered, did not comply with requirements of section 2—1203); see

also *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 470 N.E.2d 290; *Stoermer v. Edgar*, 104 Ill. 2d 287, 472 N.E.2d 400; *Davidson Masonry v. J.L. Wroan & Sons, Inc.*, 2 Ill. App. 3d 524, 275 N.E.2d 654.) When plaintiff filed his motion on March 27, 1990, no judgment order had been entered and the trial court still had jurisdiction over the matter and properly considered the motion and, upon such consideration, modified its original opinion.

Although not explicitly argued by defendant, the logical extension of his argument would be that we are without jurisdiction to consider this appeal. If, in fact, the memorandum of opinion filed on February 27, 1990, was a final judgment order, then the time to file a notice of appeal would have expired on March 31, 1990, and defendant's notice of appeal, filed almost nine months later, on December 27, 1990, would be untimely. As discussed above, however, the trial court's memorandum of opinion does not constitute a final judgment order, and the time for filing a notice of appeal did not begin to run until November 30, 1990. Thus defendant's notice of appeal was timely.

Defendant's argument that the trial court erred in reopening its judgment to consider further evidence pursuant to plaintiff's motion of March 27, 1990, is not borne out by the record. In addition to the fact that as of that date no judgment had been entered, the record does not indicate that any additional evidence was in fact presented. The record includes no transcript of any hearing at which such evidence was taken. Although defendant in his brief before this court alludes to the possibility that the court may have improperly considered facts in plaintiff's post-trial briefs as error, again the record fails to show that the brief presented any facts which had not previously been introduced at trial. We also note that the trial court, in its October 30, 1990, memorandum, stated that "at all times since the trial, the Court was aware the [$45,000] amount was due to the plaintiff."

Accordingly, for all the above reasons, the judgment of the trial court is affirmed.

Affirmed.

MURRAY and COUSINS,* JJ., concur.

---

*Prior to his retirement, Justice Lorenz heard the oral argument in this appeal. Following his retirement, Justice Cousins was substituted for Justice Lorenz on the panel of this appeal and has listened to the tape of orals and read the briefs.