DOUGLAS W. CRAWLEY, Plaintiff-Appellant, v. MARK HATHAWAY, Defendant-Appellee.

Fourth District No. 4—99—0278

Opinion filed December 16, 1999.

STEIGMANN, J., dissenting.

John D. McFetridge and James D. Spiros, both of Manion, Devens, McFetridge & Spiros, Ltd., of Danville, for appellant.

James L. Brougher, of Gunn & Hickman, P.C., of Danville, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

In April 1996, plaintiff, Douglas W. Crawley, sued defendant, Mark Hathaway, for specific performance of a written contract involving the sale of real property from Hathaway to Crawley. In January 1999, after the parties had engaged in discovery, Hathaway filed a motion for summary judgment, alleging section 2 of the Frauds Act (740 ILCS 80/2 (West 1998)), often referred to as the "Statute of Frauds," as a defense. In February 1999, Crawley moved to strike Hathaway's motion as untimely. The trial court denied that motion and ultimately granted Hathaway's motion for summary judgment. Crawley appeals, arguing that the trial court erred by (1) determining that the Statute of Frauds bars enforcement of the purported contract and (2) permitting Hathaway to untimely raise the Statute of Frauds in his motion for summary judgment. We reverse and remand.

During the spring of 1995, the parties negotiated Crawley's possible purchase of property owned by Hathaway. Around the beginning of June 1995, Hathaway prepared and the parties signed a handwritten document (hereinafter the document) that is the subject of this litigation. The document, in its entirety and in the following format, reads as follows:

"Agreement to Buy
100 Acres More or less,
83 acres of pasture & timber and 19
acres of tillable ground
For $90,000
Seller Mark Hathaway
Buyer Doug Crawley."

When the document was executed, Crawley gave Hathaway as down payment a check for $7,500, which Hathaway cashed. Hathaway then contacted a banker in an effort to help Crawley obtain financing.

Hathaway did not know the exact acreage he was selling but believed it to be "100 acres[,] more or less." The land consisted of woods and tillable ground that was in pasture and hay.

In August 1995, Hathaway commissioned a survey to acquire a legal description of the property and picked a beginning point for the survey to be done. Both parties were present during the performance of the survey and directed the surveyor as to the boundary lines for the land that was contemplated as the subject of the sale. This survey was completed in October 1995. Between October 1995 and January 1996, Hathaway changed his mind about the sale because he believed the area surveyed exceeded the size of what he intended to sell. In January 1996, Hathaway refused to transfer the property to Crawley and instead listed it with a real estate broker at a price of $150,000. The acreage on that listing was "127 acres more or less."

In January 1997, Crawley filed a request for admission of facts and genuineness of document pursuant to Supreme Court Rule 216 (134 Ill. 2d R. 216). Because Hathaway did not respond, Crawley's request for admission of facts stands admitted, establishing the following facts in this case: (1) Hathaway drafted the document; (2) Hathaway owned the property that was the subject of the document; (3) Hathaway provided a legal description by ordering a survey; (4) Hathaway received a $7,500 down payment from Crawley; and (5) Hathaway later contracted to sell the land to a third party. Subsequently, the court considered (over Crawley's objection) Hathaway's January 1999 motion for summary judgment and granted that motion.

■ ■ Summary judgment is appropriate only when the pleadings, depositions, admissions, and affidavits, if any, demonstrate that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Hubble v. O'Connor*, 291 Ill. App. 3d 974, 979, 684 N.E.2d 816, 820 (1997). The Statute of Frauds provides, in pertinent part, as follows: "No action shall be brought to charge any person upon any contract for the sale of lands *** unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith ***." 740 ILCS 80/2 (West 1998).

■ In *Callaghan v. Miller*, 17 Ill. 2d 595, 599, 162 N.E.2d 422, 424 (1959), the supreme court addressed what a purported written contract for real property needed to contain to comply with the Statute of Frauds:

"The memorandum is sufficient to satisfy the Statute of Frauds

if it contains upon its face the names of the vendor and the vendee, a description of the property sufficiently definite to identify the same as the subject matter of the contract, the price, terms and conditions of the sale, and the signature of the party to be charged."

The subject matter of the contract in *Callaghan*, 17 Ill. 2d at 599, 162 N.E.2d at 424, was described as follows:

" '[T]he Altha Martin property located on Route 25, north of the city of Batavia, Illinois (not in corporation). This area comprises five acres more or less. The space now occupied by 20 trailers[,] is properly licensed and zoned by the State of Illinois and Kane County Zoning Dept. (non-conforming use).' "

The supreme court in *Callaghan* affirmed the trial court's rejection of the Statute of Frauds argument and wrote the following:

"There is nothing in the record to indicate that some other tract was the subject matter of this memorandum. Moreover, parol evidence is admissible to identify the subject matter of the contract or memorandum. It is not necessary in contracts for the sale of real estate that it should be so described as to admit of no doubt as to what it is." *Callaghan*, 17 Ill. 2d at 599, 162 N.E.2d at 424.

More recently, the appellate court in *Guel v. Bullock*, 127 Ill. App. 3d 36, 39-40, 468 N.E.2d 811, 814 (1984), was presented with the argument that a purported real estate contract did not comply with the Statute of Frauds because the contract's description of the property in question was uncertain and ambiguous. The purported contract in *Guel* involved the sale " 'of the property commonly known as 8427 S. Euclid' " for a certain sum of money. *Guel*, 127 Ill. App. 3d at 39, 468 N.E.2d at 813. The defendant in *Guel* argued that the document at issue was an insufficient contract because it failed to specify the county or state of the subject property. The appellate court rejected this argument and, citing *Callaghan*, wrote, "Under the Statute of Frauds in this State, parol evidence may be used to clarify the terms of a written contract." *Guel*, 127 Ill. App. 3d at 40, 468 N.E.2d at 814. Significantly, the appellate court added the following:

"This is not to say that parol evidence may be used to supply missing terms. Only when the contract itself evinces the fact that the parties intended to be bound and that they agreed on the essential terms may parol evidence be introduced. See Corbin, Contracts sec. 499, at 689 (1950)." *Guel*, 127 Ill. App. 3d at 40, 468 N.E.2d at 814.

In granting summary judgment, the trial court in the present case found that the document did not describe the land with sufficient particularity and incorrectly reasoned that extrinsic evidence could not be used to overcome this deficiency.

■ The land survey completed in October 1995 may be considered when determining whether the document constitutes a valid contract.

The writing required by the Statute of Frauds may include one or more documents that collectively contain a description of the property. *Hubble*, 291 Ill. App. 3d at 983, 684 N.E.2d at 823, quoting *Prodromos v. Poulos*, 202 Ill. App. 3d 1024, 1028, 560 N.E.2d 942, 946 (1990). "A writing sufficient to satisfy the Statute of Frauds need not itself be a valid contract, but only evidence of one." *Melrose Park National Bank v. Carr*, 249 Ill. App. 3d 9, 15-16, 618 N.E.2d 839, 843 (1993). The land is sufficiently described in the writings when that description will enable a surveyor, with the aid of extrinsic evidence, to locate the property. *Thomas v. Moore*, 55 Ill. App. 3d 907, 911, 370 N.E.2d 809, 811-12 (1977).

In *Werling v. Grosse*, 76 Ill. App. 3d 834, 841, 395 N.E.2d 629, 634 (1979), the writings described the property only as " 'my farm,' " but that was deemed sufficient because the description could be made certain by the aid of extrinsic evidence and the property located. In *Moore v. Pickett*, 62 Ill. 158, 161 (1871), a letter that was the subject of the litigation did not specify the subject property, but the surrounding facts and circumstances served to identify the subject matter of the letter as the premises in question.

■ In *McConnell v. Brillhart*, 17 Ill. 354, 362 (1856), the court discussed the use of parol evidence in relation to the Statute of Frauds as follows:

> "The intention [of the parties] is to govern, and latent ambiguities may be explained, if any exist. The court may, therefore, inquire into the circumstances surrounding the parties, to gather every material fact relating to the person, who claims to be interested, and to the property which is claimed as the subject of disposition, for the purpose of identifying the person or thing intended, or the quantity of interest, where a knowledge of extrinsic facts, can in any way be made ancillary to the right interpretation of the words used. 1 Greenl. Ev., Secs. 287, 288, note 3, p. 364. As a description, 'one half of the farm on which he, said Moses, then dwelt,' parol admitted to show the land he lived on. *Doolittle v. Blakesley*, 4 Day R. 265; *Venable v. McDonald*, 4 Dana R. 336."

As a result, the court in *McConnell* found enforceable an agreement to sell a half section contiguous to Dr. Michener's because that description was susceptible of identification by parol evidence. *McConnell*, 17 Ill. at 363.

■ In this case, the document signed in June 1995 does not refer to any land survey, and the October 1995 land survey does not refer to the document. Although a contract may consist of several writings, they must be connected in some definite manner, physically or otherwise, so that it is clear they relate to the same matter. *Davito v.*

*Blakely*, 96 Ill. App. 2d 196, 201-02, 238 N.E.2d 410, 413 (1968). Nevertheless, the survey and the testimony regarding the survey are admissible as evidence of the intention of the parties.

Hathaway testified in his deposition that he and Crawley met with the surveyor at the time the survey was initiated. At that time, Hathaway identified for the surveyor the point at which the survey was to begin. Hathaway told the surveyor to follow the road to the north, then follow the road to the east to the tracks, follow the tracks on to the north boundary, and then complete the survey by following the tree line. Hathaway admitted it was his intention to sell to Crawley the wooded area and 19 acres of pasture encompassed by the survey. From this evidence and the resultant survey, the trier of fact could reasonably conclude that the parties knew exactly what property was intended to be conveyed even though Hathaway was unaware of how many acres it covered.

The purpose of the Statute of Frauds is to prevent fraud, not facilitate it. Courts will refuse to apply the Statute of Frauds if the result would be to perpetrate a fraud. *Union Mutual Life Insurance Co. v. White*, 106 Ill. 67, 73 (1883); *Davito*, 96 Ill. App. 2d at 201, 238 N.E.2d at 413; *Conness v. Conness*, 94 Ill. App. 2d 281, 284, 236 N.E.2d 753, 754-55 (1968).

In this case, because the survey and parol evidence may be admitted to identify the property subject to the contract, a genuine issue of material fact remained and summary judgment should not have been granted. Since we reverse the summary judgment on the merits, we need not consider whether the trial court committed an abuse of discretion by denying a motion to strike Hathaway's motion for summary judgment.

The judgment of the circuit court of Vermilion County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

COOK, P.J., concurs.

JUSTICE STEIGMANN, dissenting:
I respectfully dissent.

The particular document before us is so bereft of any meaningful description that the majority's resort to parol evidence amounts to "supply[ing] missing terms" of the purported contract, contrary to the sound analysis of the *Guel* court. *Guel*, 127 Ill. App. 3d at 40, 468 N.E.2d at 814. The document contained no description whatsoever of the property to be sold, except for a statement that the property

contains 100 acres "more or less," consisting of 83 acres of pasture and timber and 19 acres of tillable ground. This description contains nary a clue as to where this property might be located. Further obscuring the issue, this "description" does not identify Hathaway as the "owner" of the property but as the "seller." The two are not equivalent. Hathaway could fully comply with the written terms of the document by purchasing any 83 acres of woods and 19 acres of tillable land and selling it to Crawley. Hathaway could meet the description of "seller" even if he were acting as an agent for some other, unnamed owner.

In a big, largely rural state like Illinois, the description contained in the document could undoubtedly be applied to hundreds, perhaps thousands, of parcels of land. Because the law governing the Statute of Frauds permits Crawley to use parol evidence only to clarify the terms of the purported contract, not to supply missing terms, this court should agree with the trial court's decision to grant Hathaway summary judgment.

We should also reject Crawley's argument that the land survey completed in October 1995 may be considered when determining whether the document constitutes a valid contract. The document, signed in June 1995, does not refer to any land survey, and the October 1995 land survey does not refer to the document. Although a contract may consist of several writings, they must be connected in some definite manner, physically or otherwise, so that it is clear they relate to the same matter. *Davito*, 96 Ill. App. 2d at 201-02, 238 N.E.2d at 413. Hathaway is correct that unless the land survey somehow indicates that it is to be attached as a supplement to the document, it may not be considered as part of the document. The land survey does not so indicate. Thus, the document and the land survey cannot be read together to create an enforceable contract that would satisfy the Statute of Frauds.