OPINION
{¶ 1} This matter involves an appeal by Appellants Sandra and Jay Presley of the judgment entered by the Jefferson County Court of Common Pleas adopting a jury verdict against them and in favor of Appellees Robert and Patricia Hammack. Appellants complain that the verdict was contrary to the weight of the evidence, that the trial court abused its discretion when it denied their motion for a new trial and that Appellees' trial counsel engaged in professional misconduct throughout the trial, unfairly prejudicing the jury against Appellants. Based on the record herein, this Court affirms the trial court's judgment.
 {¶ 2} On September 30, 2000, Appellants and their eleven-year-old son were engaged in a motorcycle ride. It was Sandra's birthday and the three had been out buying her a gift. (Trial Tr. p. 171). The trio was on its way home via County Road 30, otherwise known as Wilson Avenue, between Steubenville and Mingo Junction. Jay Presley and the couple's son rode in front on one motorcycle followed by Sandra on her motorcycle riding alone.
 {¶ 3} Not far from Appellants' home, Wilson Avenue curves into a sharp "S." As Sandra slowed her vehicle to negotiate the curve, she noticed a small dog that she thought was a beagle by a mailbox at the roadside barking excitedly. She claims that the dog jumped abruptly into the road in front of her. She hit her brakes to avoid the animal, lost control of her motorcycle, and flew off the bike onto the pavement. (Trial Tr. pp. 171-173). Neighbors rushed to her assistance and called the police. During the chaos immediately following the crash, she recalled overhearing one individual exclaim, "that damn dog runs around here like that all the time." (Trial Tr. p. 173).
 {¶ 4} Sandra was transported to a nearby hospital for treatment of her injuries. Her left shoulder was extremely painful and swollen. That night, Sandra received a telephone call from Robert Hammack. According to Sandra, during that conversation Robert admitted the dog was his and told her that she should have run her bike right through or over the dog to avoid the accident. (Tr. p. 193).
 {¶ 5} Paul Parfenick witnessed the accident. He lived alongside Wilson Avenue and had been hosting a garage sale that day. Parfenick was in his yard standing about 300 feet from the crash site. He testified that the sound of motorcycles approaching drew his attention to the street. (Trial Tr. p. 95). Parfenick knew Appellants socially and says he recognized Jay Presley and his motorcycle first, followed by another bike, then saw Sandra Presley on a third bike bringing up the rear. As Sandra entered the "S" curve, Parfenick saw a dog he stated was the Hammacks' beagle dart in front of her, causing the rider to swerve and lose control. (Trial Tr. pp. 96-97). Parfenick lived across the street from the Hammacks and testified he had seen their beagle roaming loose numerous times in the past. (Trial Tr. p. 96). Parfenick also testified that he was the owner of several dogs, including more than one beagle, which had broken loose on occasion and crossed into the Hammacks' yard. (Tr. p. 106, 128).
 {¶ 6} Another neighbor, Orford Knicely, ran to the scene after hearing what sounded like a crash. He, too, recalled seeing the Hammacks' beagle running loose in the past. (Trial Tr. p. 112). Knicely testified that he spoke briefly to Hammack after the crash. During that conversation, Hammack admitted to Knicely that his dog must have broken loose. (Trial Tr. pp. 112, 126).
 {¶ 7} The Hammacks also testified. According to Mrs. Hammack, one of her sons let the beagle out of its pen that day. (Trial Tr. p. 120). Mr. Hammack, who did not actually witness the accident, indicated that the dog was chained up on his property before the accident, and although the dog was running loose after the crash, it was still on the Hammacks' property. (Trial Tr. p. 127). Mr. Hammack admitted that he did call Sandra Presley on the evening of the crash to see how she was feeling. (Trial Tr. p. 196). Hammack conceded that he told Sandra that had she just run the dog over she could have avoided the accident altogether. (Trial Tr. pp. 196-197) He denied, however, making any admission that the dog belonged to him. (Trial Tr. p. 196).
 {¶ 8} Susan Leon and Clara Pierce were also in the vicinity when the accident occurred. Susan Leon stated she was so focused on Sandra and her condition following the accident that she did not recall seeing a dog. (Trial Tr. p. 134). Clara Pierce said she actually saw a beagle standing by the mailbox barking just before the crash but not afterwards. (Trial Tr. p. 141).
 {¶ 9} Sandra eventually was required to undergo two surgeries to repair the damage done to her shoulder because of the crash. (Patrick DeMeo Depo., Tr. pp. 13, 17).
 {¶ 10} On March 13, 2001, the Presleys ("Appellants") filed a complaint in the Jefferson County Court of Common Pleas alleging that the Hammacks' ("Appellees") failure to properly confine their dog was a direct and proximate cause of her accident and her injuries. The matter proceeded to a jury trial on May 28, 2002, and, after deliberating less than twenty-five minutes, the jury returned a unanimous verdict in favor of Appellees. (Trial Tr. p. 236). The jury also unanimously signed a special interrogatory concluding that the Presleys failed to demonstrate that Appellees' dog was the proximate cause of the crash. (Trial Tr. p. 236). The court entered judgment on the verdict on June 11, 2002.
 {¶ 11} Appellants filed a motion for a new trial on June 13, 2002. Pursuant to Civ.R. 59(A)(6), Appellants maintained that the verdict was not sustained by the weight of the evidence. On July 1, 2002, the trial court denied the motion, but gratuitously noted as follows:
 {¶ 12} "I was surprised by the verdict. I think my whole staff was and I think they messed up. I'm not sure that it rises to the level of a new trial. I'm going to overrule the motion but it would be a good one to appeal and I hope you get your new trial." (June 24, 2002 Hearing Tr. p. 7).
 {¶ 13} Apparently taking the trial court's advice, on July 3, 2002, Appellants filed a Notice of Appeal to this Court.
 {¶ 14} In their first two assignments of error, the Presleys contend that,
 {¶ 15} "The trial court abused its discretion by denying [appellants'] motion for a new trial."
 {¶ 16} "The jury's verdict was against the manifest weight of the evidence."
 {¶ 17} Appellants' first two assignments of error both challenge the jury's verdict in light of the weight of the evidence and more readily addressed as a single issue. While the record reflects that the facts of this case were far from clear, this, alone, does not merit reversal based on the record.
 {¶ 18} Under Civ.R. 59(A)(6) a new trial may be granted to all or any of the parties on any or all of the issues where the judgment in the matter is not supported by the weight of the evidence. In addressing a motion for a new trial challenging the weight of the evidence, the trial court must review the evidence presented at trial and pass upon the credibility of the witnesses and the evidence in general. Mannion v.Sandel (2001), 91 Ohio St.3d 318, 322, 744 N.E.2d 759. The trial court is one step closer to the facts of the case than an appellate tribunal and therefore vested with broad discretion in ruling on motions for a new trial made pursuant to Civ.R. 59(A)(6); Holcomb v. Holcomb (1989),44 Ohio St.3d 129, 131; and Demski v. Sidwell, 11th Dist. No. 2002-T-0058, 2003-Ohio-1423.
 {¶ 19} As a result, this Court may overturn the trial court's ruling on a motion for a new trial challenging the weight of the evidence only where the record demonstrates that the court abused its discretion.Miller v. Paulson (1994), 97 Ohio App.3d 217, 224, 646 N.E.2d 521
(citations omitted). Abuse of discretion is a term which implies something more than an error of law or judgment; rather, it indicates that the court was acting in an unreasonable, arbitrary, or unconscionable manner. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169,559 N.E.2d 1301.
 {¶ 20} Appellants' claim that the jury verdict is against the weight of the evidence faces a similarly rigorous standard of review. When it addresses a challenge based on the weight of the evidence, "an appellate court conducts the same manifest weight analysis in both criminal and civil cases." Ray v. Vansickle (Oct. 14, 1998), 9th Dist. Nos. 97CA6897 and 97CA6907. This Court draws all reasonable inferences from that evidence, "considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."Ohio Turnpike Comm. v. Likowski, 9th Dist. No. 21097, 2002-Ohio-7322, P20.
 {¶ 21} On review, we must begin with the presumption that the judgment or verdict entered and the findings supporting that verdict are correct. Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19,526 N.E.2d 1350. Furthermore, even, "if the evidence is susceptible of more than one construction, [this court] must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id. In other words, as long as the verdict is supported by some competent, credible evidence, this Court will not interfere. Complete Gen. Constr. Co. v.Ohio Dept. of Transp. (2002), 94 Ohio St.3d 54, 62, 760 N.E.2d 364.
 {¶ 22} While the record does not contain overwhelming evidentiary support for the jury's unanimous verdict against the Appellants, the verdict is grounded on sufficient competent, credible evidence to defeat Appellants' motion for a new trial.
 {¶ 23} Appellants insist that there was no evidence presented that any dog other than the Hammacks' beagle was running loose on the day of the incident. While they are correct on this technical point, Appellants are disingenuous as to the weight to be given this one fact. There was credible testimony that other neighborhood dogs, including two beagles, did occasionally roam free in this neighborhood. (Trial Tr. pp. 106, 128). Further, although both Sandra Presley and Paul Parfenick testified that the Hammacks' beagle was involved in the accident, neither specifically described the animal or referred to any distinguishing factor that led them to reach that conclusion. Given a troubling lack of identifying information, the jury could have chosen to disbelieve their testimony that Appellees owned the dog Sandra claims caused the accident and that it could have been no other dog, in light of the information provided by other witnesses.
 {¶ 24} There is no doubt that Sandra Presley had a pecuniary interest in the outcome of the case. The jury may have concluded that such an interest, coupled with the fact that by the very nature of the incident she may not have been thinking clearly during or in the moments following this accident, makes her account questionable. The jury may also have concluded that Paul Parfenick was not credible. Parfenick, himself, owned several dogs, including beagles, and his dogs had been known to run the neighborhood. The record suggests that while Parfenick was friendly with the Presleys, he may not have been on such good terms with the Hammacks. Coupled with the failure to describe any distinguishing characteristics in the dog alleged to be at the center of this incident, the jury was free to believe part, all or none of Sandra and Paul's testimony.
 {¶ 25} Appellants also overlook the fact that the jury may have disbelieved that Sandra's accident was caused by a dog at all. The interrogatory placed before the jury does not ask them to state their finding as to the proximate cause of the accident and Sandra's resultant injury. The first interrogatory simply asks whether Appellees' dog was, in any way, the proximate cause. The interrogatory was answered in the negative. This leaves the question wide open as to whether the jury believed someone else's dog caused the accident or disbelieved Sandra's claim altogether. The jury could have concluded that she lost control of her motorcycle for any one of a hundred other reasons.
 {¶ 26} Credibility determinations must be left to the finder of fact; here, the jury. Based on the record before us, the trial court did not err in failing to grant Appellants' motion for a new trial. We note that we are troubled by the trial court judge's commentary in this matter to the effect he disagreed with the verdict and encouraged Appellants to file an appeal of his decision not to grant a new trial. As the trial court denied this request, we must view his comments to mean that he may not have decided this matter the way the jury ultimately decided it, but that while he apparently welcomed our review, he was forced to conclude the jury was within its authority to so decide. This is the only interpretation possible in light of the trial court ruling and our own review of the record.
 {¶ 27} In their third assignment of error, Appellants maintain that,
 {¶ 28} "Appellees' counsel engaged in misconduct during voir dire, opening statement, closing argument, and while questioning witnesses by commenting on matters that were not in evidence, misstating the legal issue to be decided by the jury, and improperly attacking the character of one of appellants' key witnesses, thereby misleading the jury to appellants' prejudice."
 {¶ 29} Initially, we must note that Appellants have largely waived this assignment of error. The record demonstrates that Appellants failed to interpose contemporaneous, or even belated, objections to most of the remarks at the heart of their assignment. In civil as well as criminal cases, failure to timely advise the trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal. Gallagher v. Cleveland Browns Football Co. (1996),74 Ohio St.3d 427, 436, 659 N.E.2d 1232. While the plain error doctrine may allow courts of review to consider, under certain limited circumstances, issues otherwise deemed waived, the Ohio Supreme Court has made it clear that a "plain error" review is not favored in civil cases.Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 122,679 N.E.2d 1099. As the Court noted in Goldfuss,
 {¶ 30} "Parties in civil litigation choose their own counsel who, in turn, choose their theories of prosecuting and defending. The parties, through their attorneys, bear responsibility for framing the issues and for putting both the trial court and their opponents on notice of the issues they deem appropriate for jury resolution." Id. citing,Gallagher, supra at 433.
 {¶ 31} In civil appeals then, review for plain error should be undertaken, "only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss, supra at 122-123, accord Kahn v. Moront, 6th Dist. No. L-02-1202, 2003-Ohio-1410 (counsel must object to improper jury questions during voir dire or face waiver on appeal).
 {¶ 32} The case at bar simply does not present such exceptional circumstances. Accordingly, this Court need not undertake review of the conduct that Appellants now claim entitle them to a new trial. Chiconev. Mayo Orvets Real Estate (Dec. 1, 1998), 7th Dist. No. 96 CA 28; citing, State ex rel. Quarto Mining Company v. Foreman, et al. (1997),79 Ohio St.3d 78, 679 N.E.2d 706. Even if we were to entertain the merits of Appellants' accusations against Appellees' trial counsel, however, we cannot grant Appellants the relief they seek.
 {¶ 33} Trial counsel is accorded wide latitude in opening statement subject to the restriction that it may not comment on incompetent, inadmissible or improper evidence. Maggio v. Cleveland
(1949), 151 Ohio St. 136, 84 N.E.2d 912, para. two of syllabus. This same standard applies to closing argument. Pang v. Minch (1990),53 Ohio St.3d 186, 559 N.E.2d 1313, paras. two and three of the syllabus. Counsel must avoid attacks on a witness' integrity during closing argument unless such attacks find support in the record. Plas v.Holmes Constr. Co. (1952), 157 Ohio St. 95, 104 N.E.2d 689, paragraph three of the syllabus. Likewise, counsel must refrain from unwarranted or personal attacks upon opposing counsel. Persistent abuses by counsel are proper grounds for a new trial. Jones v. Macedonia-Northfield Banking Co.
(1937), 132 Ohio St. 341, 7 N.E.2d 544, paragraph one of syllabus.
 {¶ 34} Generally, the effect of improper argument upon a jury can be evaluated in terms of both its evidentiary basis and the likelihood that it will prejudice the jury. Caserta v. Allstate Insurance Co. (1983), 14 Ohio App.3d 167, 169, 470 N.E.2d 430. Nevertheless, only, "where gross and abusive conduct occurs, is the trial court sua sponte bound to correct the prejudicial effect of counsel's misconduct." Pesekv. University Neurologists Assn., Inc. (2000), 87 Ohio St.3d 495, 501,721 N.E.2d 1211. (Emphasis in original). Counsel's behavior has to be of such a reprehensible and heinous nature that it constitutes prejudice before this Court can reverse a judgment because of the behavior. Huntv. Crossroads Psychiatric Psychological Ctr. (Dec. 6, 2001), 8th Dist. No. 79120; citing, Kubiszak v. Rini's Supermarket (1991),77 Ohio App.3d 679, 688, 603 N.E.2d 308.
 {¶ 35} The record before us clearly reflects that a new trial is not warranted on this basis. Counsel's remarks, while occasionally questionable, were not abusive or so outrageous that they prejudiced the jury against Appellants. Moreover, in the rare instances where Appellees' counsel attempted to elicit improper information concerning a witness, the trial court, either sua sponte or in response to a timely objection, sustained the objection, struck the testimony, and instructed the jury to disregard it. (See Trial Tr. p. 122). At one point, Appellees' counsel began questioning a witness concerning the possibility that Parfenick was a recovering drug addict. On its own, the court interrupted the questioning and barred the testimony. Given the record, it appears that the trial court did an exemplary job of preventing the jury from hearing or considering potentially irrelevant or prejudicial testimony, and ensuring that the evidence the jury considered was neither improper nor unfairly prejudicial.
 {¶ 36} Based on the above, we overrule Appellants' three assignments of error and affirm the judgment entered by the Jefferson County Court of Common Pleas.
Judgment affirmed.
Donofrio, J., concurs.
DeGenaro, J., concurs in part.