WESTPOINT MARINE, INC., Plaintiff-Appellant, v. MARY A. PRANGE *et al.*,
Defendants-Appellees.

Fourth District    No. 4—03—0818

Opinion filed June 30, 2004.

Clifford C. Emons and Jeff Naville, both of Smith, Allen, Mendenhall, Emons & Selby, of Alton, for appellant.

Edward J. Fanning, of Hardin, for appellees.

JUSTICE STEIGMANN delivered the opinion of the court:

In September 1999, plaintiff, WestPoint Marine, Inc., was leasing 500 feet of riverfront property from defendant Mary A. Prange, pursuant to a lease agreement that contained a provision granting West-

Point Marine an option to buy the property should Prange decide to sell it. The leased riverfront property was part of Prange's farm. On September 25, 1999, Prange entered into a contract to sell the Prange farm (including the riverfront property leased by WestPoint Marine) to defendant Pool 24 Tug Service, Inc.

In November 1999, WestPoint Marine filed a complaint seeking specific performance of the option-to-buy provision of its lease agreement with Prange. Following an October 2002 bench trial, the trial court denied WestPoint Marine's complaint for specific performance.

WestPoint Marine appeals, arguing that the trial court's decision was against the manifest weight of the evidence. We disagree and affirm.

## I. BACKGROUND

In December 1993, Prange and her husband, William Prange (who is now deceased), entered into a lease with Grantz's Marine Service, Inc. The lease provided that (1) Grantz's Marine would "lease with an option to buy approximately five hundred (500) feet of river frontage" for 25 years, for the purpose of fleeting barges; and (2) the river frontage "is located in Calhoun County, on the right descending bank of the Illinois River, just below Hardin, IL. (approximately mile 20)." In February 1996, Grantz's Marine assigned the lease to WestPoint Marine.

The lease also provided, in pertinent part, as follows:

"In the event [the Pranges] desire to sell or otherwise dispose of all or any portion of the river frontage below Hardin[,] IL., and have received a bona fide offer for the same, [s]ellers shall notify Steven F. Grantz in writing, and thereafter Steven F. Grantz shall have fifteen (15) days within which to purchase the river frontage at the price, terms, and conditions as is offered by the proposed purchaser."

In a September 27, 1999, letter, Prange's realtor, Jean Hagen, notified WestPoint Marine's president, Kevin Jennings, that the entire Prange farm was going to be sold to Pool 24 Tug Service, pursuant to the terms of a sales contract, a copy of which was attached. On October 12, 1999, Jennings replied to Hagen via facsimile. The cover page of the facsimile transmission stated, in pertinent part, "Please accept this as my meeting my comittment [sic] to express my intent to purchase before your deadline. I am looking forward to reaching final terms and conditions as soon as possible in order to assist Ms. Prange in reaching her goals and time requirements." The two pages that followed were in the form of a letter from Jennings to Prange and Hagen, and set forth various conditions of Jennings' proposed purchase. The section entitled "Description of Property," stated, in pertinent

part, as follows: "The property to be sold is located at Hardin, Illinois[,] and is described as the Mary Jo Prange property, just south of Hardin, Illinois." In the section entitled "Price" the letter stated, "[t]he proposed purchase price shall be negotiated in good faith based upon appraisal by an independent third party."

At the October 2002 bench trial, the trial court admitted in evidence Prange's deposition. Prange stated that she owned approximately 1,000 feet of riverfront property. When asked if she knew the distance or the size of the area leased to WestPoint Marine, she replied as follows:

"It covered the 500 feet. Our property at that time was marked in lots on the river frontage, each was 50 foot and it began in the middle of lot 16 and 17. And they were further south from that by probably four lots. Then from that point, you could mark the 500 and they were just about at the same location each time."

She acknowledged that at times, WestPoint Marine used more than 500 feet of riverfront property, and no one took umbrage at it.

Jennings testified at trial that when he sent Hagen the facsimile expressing his intent to exercise the option to buy, he was not certain whether he would be buying just the riverfront property or the whole Prange farm. When asked whether he "wanted to exercise [his] option to purchase the property that [h]e had leased," Jennings responded, "yes." Jennings estimated that between 30 and 45 days during any given year, WestPoint Marine used more than 500 feet of Prange's riverfront property. Jennings also explained that WestPoint Marine's floating buoys were tied off to trees on the riverfront property. Jennings estimated that it used up to 200 feet inland, depending on water levels.

Jennings identified WestPoint Marine's exhibit No. 5 as a map showing the location of the 500 feet of riverfront property that WestPoint Marine was leasing. The trial court admitted the exhibit for demonstrative purposes only, after sustaining Prange's objection to the exhibit on the ground of insufficient foundation.

At the conclusion of the trial, the trial court granted the parties additional time to file written arguments.

In July 2003, the trial court entered an order denying WestPoint Marine's complaint for specific performance. The order stated that the court found "[t]hat the lease agreement which [WestPoint Marine] alleges also creates a[n] 'option to buy' does not contain a description of the property specific enough for which specific performance should be granted."

This appeal followed.

## II. WESTPOINT MARINE'S CLAIM THAT THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

WestPoint Marine argues that the trial court's decision was against the manifest weight of the evidence. We disagree.

■ Parties to a contract are not entitled to specific performance as a matter of right. Instead, the remedy of specific performance is granted in the exercise of the trial court's sound discretion. *Butler v. Kent*, 275 Ill. App. 3d 217, 226, 655 N.E.2d 1120, 1126 (1995). "[C]lear, explicit[,] and convincing evidence is required to support a grant of specific performance," and where testimony is conflicting in a bench trial, the trial court's factual findings will not be disturbed unless they are against the manifest weight of the evidence. *Butler*, 275 Ill. App. 3d at 227, 655 N.E.2d at 1126.

■ A contract for sale of real estate cannot be enforced by a court unless it contains the essential contract terms, including (1) the names of the buyer and seller; (2) a description of the property; (3) the sales price or the means of determining the price, and the terms and conditions of the sale; and (4) the signature of the party to be charged. *Kane v. McDermott*, 191 Ill. App. 3d 212, 217, 547 N.E.2d 708, 712 (1989). In addition:

"The contract's terms must be so certain and unambiguous that the court can require the specific thing contracted for be done. Where the terms of a contract are ambiguous or where the writing is capable of more than one construction, parol evidence is admissible to explain or ascertain what the parties intended. However, parol evidence may not be used to supply missing terms. [Citation.] The court should not make a new contract for the parties." *Kane*, 191 Ill. App. 3d at 217, 547 N.E.2d at 712.

"A description of property is sufficiently definite if it will enable a surveyor, by aid of extrinsic evidence, to locate the property." *Kane*, 191 Ill. App. 3d at 217, 547 N.E.2d at 712.

■ WestPoint Marine contends that the trial court's finding that the property was not defined with enough specificity to grant specific performance was against the manifest weight of the evidence because there was "no evidence presented that the location of the property was disputed by any party." However, the issue is not whether the location of the property was disputed; rather, the issue is whether the contract, pursuant to which the trial court was asked to grant specific performance, identified the property with sufficient specificity.

In this case, the following evidence supports the trial court's finding that the property was not sufficiently defined in the lease: (1) the lease described the property only as "approximately" 500 feet of river-

front property at "approximately mile 20" "just below Hardin"; (2) the 500 feet of riverfront property used by WestPoint Marine fluctuated to some extent; (3) when Jennings attempted to exercise the option to buy, he was not certain what he would be buying; and (4) no agreement existed as to how far inland WestPoint Marine's lease extended. Reviewing the evidence under the appropriate standard of review, we conclude that the court's finding was not against the manifest weight of the evidence.

In so concluding, we note that this case is distinguishable from *Kane*. In that case, the crop lease that contained an option-to-buy provision contained a legal description of the property at issue. *Kane*, 191 Ill. App. 3d at 217, 547 N.E.2d at 712. Here, the lease does not contain anything resembling a legal description of the property subject to the option-to-buy provision. It does not indicate the precise location or the dimensions of either the Prange farm or the 500 feet of riverfront property leased by WestPoint Marine.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

APPLETON, J., concurs.

JUSTICE COOK, dissenting:

I respectfully dissent and would reverse the judgment of the trial court, remanding with instructions that the option to purchase be honored.

Prange owns a 49-acre tract of land on the west bank of the Illinois River, south of Hardin, Illinois. It appears the tract is primarily used for barge fleeting operations. In 1993, the Pranges entered into a 25-year lease with Grantz's Marine Service, Inc., covering "approximately five hundred (500) feet of river frontage," and giving Grantz's Marine a first option to purchase the leased premises. That lease was assigned to WestPoint Marine in 1996. On September 24, 1999, Pool 24 Tug Service, Inc., submitted an offer to purchase the 49-acre tract, "subject to cancellation of present lease on the riverfront of said property." (The lease provides that "In the event the river frontage is sold to another party, the purchaser will be obligated to honor the terms and conditions of this lease.") On September 27, Prange's agent notified WestPoint Marine of the pending contract, advising that "you, under the articles of the agreement, have fifteen (15) days within which to purchase the property as stated in the enclosed contract or forfeit your interests."

The lease agreement clearly provides WestPoint Marine with an option to purchase. WestPoint Marine and its predecessor have performed their obligations under the lease for more than 10 years. The majority now makes a new contract for the parties, deleting the option to purchase, a substantial right that the optionee had bargained for and paid for. If the option to purchase is invalid because the legal description in the lease is insufficient, is the lease also invalid? The majority should disclaim any intention to make its holding *res judicata* in any future action filed by Pool 24 Tug Service, Inc., seeking to invalidate the lease.

Where the facts are not in dispute, the existence and interpretation of a contract are questions of law that the trial court may decide on a motion for summary judgment and that we may review independently. *Pokora v. Warehouse Direct, Inc.*, 322 Ill. App. 3d 870, 875, 751 N.E.2d 1204, 1209 (2001). The case cited by the majority for the proposition that parties to a contract are not entitled to specific performance as a matter of right and that deference should be given the trial court's factual findings is distinguishable, involving a complicated calculation of the amount due plaintiff for the "net fair market value" of his interest in the Village Green Investment Corporation. *Butler*, 275 Ill. App. 3d at 225, 655 N.E.2d at 1125-26.

The trial court found that the lease agreement "does not contain a description of the property specific enough for which specific performance should be granted." How can that be? This lease agreement was executed in 1993, and the leased premises have been used continuously since that time. Perhaps in 1993 there could have been a dispute as to what property had been leased, but that is no longer possible. The law is clear that a lease need not contain a specific description of the property. "[A] defective description of land may be aided by the conduct of the parties, such as, that the vendor put the purchaser in possession of the premises intended to be conveyed." *Hayes v. O'Brien*, 149 Ill. 403, 413, 37 N.E. 73, 75 (1894). There is no dispute that a surveyor could stake out WestPoint Marine's existing operation. That is all that is required.

The majority ignores the holding of *Kane*, upon which it purportedly relies. *Kane* involved a farm lease of property in sections 8, 21, and 29, but the plaintiff sought to enforce the option only as to a part of the property in section 29. The exercise of the option in *Kane* said simply that the plaintiff was exercising the option granted in section 7 of the lease. Section 7 of the lease said simply that the plaintiff had " 'first option to purchase any part or all of the land farmed by the tenant.' " *Kane*, 191 Ill. App. 3d at 215, 547 N.E.2d at 710. This court *rejected* the argument that the property was insufficiently described in

the option. "A description of property is sufficiently definite if it will enable a surveyor, by aid of extrinsic evidence, to locate the property. Any reference to ownership or other matters which would make the description definite will be considered to locate the property." *Kane*, 191 Ill. App. 3d at 217, 547 N.E.2d at 712.

The majority decision is consistent with Justice Steigmann's dissent in *Crawley v. Hathaway*, 309 Ill. App. 3d 486, 721 N.E.2d 1208 (1999), but we should follow the *Crawley* majority opinion. In that case, an agreement to buy a portion of a farm, " '100 Acres More or less, 83 acres of pasture & timber and 19 acres of tillable ground' " was held to be a sufficient description. *Crawley*, 309 Ill. App. 3d at 487, 721 N.E.2d at 1209. The land is sufficiently described in the writings when that description will enable a surveyor, with the aid of extrinsic evidence, to locate the property. *Crawley*, 309 Ill. App. 3d at 490, 721 N.E.2d at 1211, citing *Thomas v. Moore*, 55 Ill. App. 3d 907, 911, 370 N.E.2d 809, 811-12 (1977). *Crawley* cited other cases. A description of the property only as "my farm" was deemed sufficient because the description could be made certain by the aid of extrinsic evidence and the property located. *Werling v. Grosse*, 76 Ill. App. 3d 834, 841, 395 N.E.2d 629, 634 (1979). A letter that did not specify the subject property was sufficient where the surrounding facts and circumstances served to identify the subject matter of the letter as the premises in question. *Moore v. Pickett*, 62 Ill. 158, 161 (1871). "Moreover, parol evidence is admissible to identify the subject matter of the contract or memorandum. It is not necessary in contracts for the sale of real estate that it should be so described as to admit of no doubt as to what it is." *Callaghan v. Miller*, 17 Ill. 2d 595, 599, 162 N.E.2d 422, 424 (1959).

There is a strong tendency for the courts to sustain a legal description if at all possible, since it is apparent that the parties intended for something to be conveyed or they never would have been involved in the transaction. J. Cribbet, Principles of the Law of Property 157 (1962). The majority here trashes the intent of the parties by its insistence that the lease "indicate the precise location or the dimensions of either the Prange farm or the 500 feet of riverfront property" (349 Ill. App. 3d at 1014), a specificity requirement that is disavowed by the cases. Just as an offer to sell "my farm," is sufficient, an offer to purchase "the property I lease" is sufficient.

Questions are presented when the owner of a tract leases out a portion of that tract with an option to purchase. Certainly the lessee should not be allowed to frustrate the lessor's later attempt to sell the entire tract by insisting that the leased portion be split off. On the other hand, the lessor should not be allowed to render the option

nugatory merely by attaching additional land to the part under option. *The Retreat v. Bell*, 296 Ill. App. 3d 450, 456, 695 N.E.2d 892, 896 (1998). WestPoint Marine acted appropriately here by offering to take the entire tract, or the portion it leased, as Prange chose. Prange will not be prejudiced whether WestPoint Marine or Pool 24 Tug Service, Inc., purchases the property.